UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FERDINAND BENJAMIN**, Individually and as the Personal Representative of the Estate of **ENOCK BENJAMIN**, Deceased<br>957 Anchor Street<br>Philadelphia, PA 19124<br><br>*Plaintiff*<br><br>vs.<br><br>**JBS S.A.**<br>Avenida Brig Faria Lima 2.391 2<br>Andar Jd Paulistano<br>Sao Paulo, SP 01452-000 Brazil<br><br>**JBS USA FOOD COMPANY**<br>1770 Promontory Circle<br>Greeley, CO 80634<br><br>**JBS USA HOLDINGS, INC.**<br>1770 Promontory Circle<br>Greeley, CO 80634<br><br>**JBS SOUDERTON, INC.**<br>c/o Corporation Service Company<br>2595 Interstate Drive, Suite 103<br>Harrisburg, PA 17110<br><br>and<br><br>**PILGRIM'S PRIDE CORPORATION**<br>c/o Corporation Service Company<br>2595 Interstate Drive, Suite 103<br>Harrisburg, PA 17110<br><br>*Defendants* | CIVIL ACTION NO. _____ |

## NOTICE OF REMOVAL

Defendant JBS USA Food Company files its Notice of Removal to remove this action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, and the doctrine of fraudulent joinder. Plaintiff Ferdinand Benjamin, individually and as the personal representative of the Estate of Enock Benjamin, deceased ("Plaintiff") originally filed this action in the Philadelphia County Court of Common Pleas, May Term, 2020, Case No. 370, where the action is currently pending.

### I.     NATURE OF THE ACTION

1. This is a wrongful death and survival action filed by the son of a deceased employee of JBS Souderton, Inc., which is a workers' compensation subscriber. (*See generally* Complaint – Civil Action ("Compl.") attached hereto as Exhibit ("Ex.") A; *see also* Declaration of Amanda Keller ("Keller Dec.") ¶¶ 6, 12 attached as Ex. B; Declaration of Stephany Rockwell ("Rockwell Dec.") ¶¶ 3-4 attached as Ex. C and Attachment 1 thereto.)

2. The son, Plaintiff Ferdinand Benjamin, claims his father, Enock Benjamin, was allegedly exposed to COVID-19 in March 2020—the period in which Enock Benjamin "was a union steward" employed with JBS Souderton, Inc., which is a "meat processing plant" located in Souderton, Pennsylvania. (Compl. ¶¶ 3, 58-68.)

3. Plaintiff alleges JBS Souderton, Inc. "ignored worker safety" by failing to follow "federal guidance"—that is, guidelines issued by the Occupational Safety and Health Administration ("OSHA") and the Centers for Disease Control and Prevention ("CDC")—during the early days of the COVID-19 pandemic in the United States. (*Id.* ¶¶ 6-7, 20-23.)

4.     Plaintiff also claims that "[b]y keeping the Souderton plant open without providing the proper and recommended safety precautions, JBS intentionally misrepresented the safety of the facility." (*Id.* ¶ 11.)

5.     Although Enock Benjamin's last day at the JBS Souderton, Inc. plant was March 27, 2020 (*id.* ¶ 93), Plaintiff does not allege Mr. Benjamin tested positive for COVID-19 on or before that date. (*See generally* Compl.)

6.     The lawsuit also does not allege that anyone, let alone JBS Souderton, Inc., knew that Enock Benjamin was ill, let alone ever infected with COVID-19. (*Id.*)

7.     On April 3, 2020, Enock Benjamin passed-away allegedly "from respiratory complications related to COVID-19." (*Id.* ¶¶ 95-96.)

8.     Plaintiff fails to allege when, where, or how Enock Benjamin allegedly became infected with COVID-19 and does not state whether Enock Benjamin was diagnosed with COVID-19 before he died. (*See generally* Compl.)

9.     There is no indication he sought any medical treatment or received a positive diagnosis of COVID-19 prior to his death. (*Id.*)

10.    Approximately one month after Enock Benjamin died, Plaintiff filed this wrongful death and survival action in Philadelphia County, Pennsylvania seeking damages for Enock Benjamin's alleged work-related injuries. (*See id.*)

11.    Plaintiff alleges negligence, fraudulent misrepresentation, and intentional misrepresentations claims against five defendants. (*Id.* ¶¶ 147-195.)

12. Besides suing Enock Benjamin's employer JBS Souderton, Inc., Plaintiff names the following companies as co-defendants: (a) JBS S.A.; (2) JBS USA Food Company; (3) JBS USA Holdings, Inc.[1]; and (4) Pilgrim's Pride Corporation. (*Id.* ¶¶ 114-125, 130-133.)

13. Plaintiff does not allege that Enock Benjamin was employed by any of JBS Souderton, Inc.'s co-defendants or ever visited their offices. (*See generally* Compl.)

14. The absence of such allegations is not surprising because JBS S.A. is based in Brazil and the other companies, to the extent they existed, are incorporated in Delaware with their principal places of business located in Colorado. (*Id.* ¶¶ 114, 118, 122, 130.)

## II.     REMOVAL IS TIMELY

15. On May 7, 2020, Plaintiff filed a Complaint – Civil Action ("Complaint") in the Philadelphia County Court of Common Pleas, styled *Ferdinand Benjamin, Individually and as the Personal Representative of the Estate of Enock Benjamin, Deceased v. JBS S.A., JBS USA Food Company, JBS USA Holdings, Inc., JBS Souderton, Inc., and Pilgrim's Pride Corporation*, May Term 2020, Case Number 370. (*See* Ex. A, Compl.)

16. Service was made on JBS USA Food Company on May 14, 2020. (*Id.*)

17. Plaintiff also claims to have served JBS USA Holdings, Inc. on May 14, 2020 (*id.*), but that entity's existence ended approximately five (5) years before the events giving rise to Plaintiffs' claims in the Complaint.

18. To date, there is no information demonstrating Plaintiff has served Defendants JBS S.A., JBS Souderton, Inc., or Pilgrim's Pride Corporation. (*Id.*)

---

[1] JBS USA Holdings, Inc.'s corporate existence ended in 2015. (*See* Clayton E. Bailey letter dated May 29, 2020, attached as Ex. D.)

19. Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint and all process and pleadings served upon JBS USA Food Company and other alleged defendants are attached to this notice as Exhibit "A."

20. Pursuant to 28 U.S.C. § 1446(b), this Notice is filed within thirty (30) days of the date JBS USA Food Company was served with the Complaint.

21. Defendants JBS S.A. and Pilgrim's Pride Corporation consent to removal. (*See* Ex. D.)

22. Defendant JBS USA Holdings, Inc. has not existed for five years and thus its consent is unnecessary. (*See id.* and attachments thereto.)

23. Defendant JBS Souderton, Inc.'s consent is immaterial because Plaintiff fraudulently joined JBS Souderton, Inc., *see Balazik v. Cty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995), but JBS Souderton, Inc. consents to removal. *See id.*

### III.     REMOVAL IS PROPER

24. Removal is proper pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendants JBS S.A., JBS USA Food Company, JBS USA Holdings, Inc. (which has not been in existence since 2015), and Pilgrim's Pride Corporation, the amount-in-controversy exceeds $75,000.00, and because Plaintiff fraudulently joined JBS Souderton, Inc., as a defendant.

25. Additionally, removal is proper under 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

26. Each basis for jurisdiction will be addressed in turn.

A.     **Complete Diversity Exists and the Amount-in-Controversy Exceeds $75,000.00.**

27.    Plaintiff Ferdinand Benjamin is alleged to be a citizen of Pennsylvania. (Compl. ¶ 111.)

28.    The deceased, Enock Benjamin, is also alleged to have been a citizen of Pennsylvania. (*Id.* ¶ 113.)

29.    Defendant JBS USA Food Company is a Delaware corporation with its principal place of business in Colorado. (*Id.* ¶ 118.)

30.    Defendant JBS USA Holdings, Inc., which ceased to exist in 2015, was once a Delaware corporation with its principal place of business in Colorado. (*Id.* ¶ 122.)

31.    Defendant JBS S.A. is a corporation organized and existing under the laws of Brazil with its principal place of business located in Brazil. (*Id.* ¶ 116.)

32.    Defendant Pilgrim's Pride Corporation is a Delaware corporation with its principal place of business in Colorado. (*Id.* ¶ 130.)

33.    Defendant JBS Souderton, Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania (*id.* ¶ 126), but the Court should disregard JBS Souderton, Inc.'s citizenship for jurisdictional purposes because Plaintiff fraudulently joined JBS Souderton, Inc. *See* Section III.B, *infra*.

34.    If liability is imposed and damages are awarded in this case (which is contested), Plaintiff will seek damages exceeding $75,000.00.

35.    Plaintiff has filed a wrongful death and survival action under 42 Pa.C.S. §§ 8301 and 8302. The purpose of the Wrongful Death Act is to compensate the spouse, children, or parents of a decedent for the loss of earnings of the deceased occasioned by the negligence of a defendant(s). The Survival Act allows a personal injury action brought by the decedent's personal

representative. Both are derivative actions, in that each is based on the existence of an underlying negligence action.

36. Although liability is disputed, the Complaint alleges "Enock Benjamin's wrongful death beneficiaries incurred or have been caused to incur and pay *large and various expenses* for medical treatment, hospital care and medicine rendered to decedent until the time of his death and to incur *various* funeral, burial, and estate and administration expenses for which Plaintiff is entitled to compensation." (Compl. ¶ 190 (emphasis added).)

37. Federal courts in the Third Circuit, as well as Pennsylvania state courts, have held that the amount-in-controversy exceeded jurisdictional requirements based on allegations of damages similar to the ones made by Plaintiff in this case. In at least one reported legal opinion, an appellate court affirmed a jury award of $125,000.00 for deprivation of society and comfort and funeral and other death expenses incurred after an elderly grandmother suffering from severe brain damage died. *Dubose v. Quinlan*, 125 A.3d 1231, 1239-1240 (Pa. 2015). In *Varzally v. Sears, Roebuck & Co.*, this Court held that the amount-in-controversy requirement was met when the plaintiff sought an unspecified amount of damages for lost wages and "ongoing 'medical problems'" suffered as a result of his injuries. No. 09-CV-6137, 2010 WL 3212482, at *2 (E.D. Pa. July 30, 2010). This Court held similarly in *Ciancaglione v. Sutherlin*, where the plaintiff alleged that he suffered temporary and permanent physical injuries, required medical care, and sought compensatory and punitive damages. No. 04-CV-2249, 2004 WL 2040342, at *2 (E.D. Pa. Sept. 13, 2004). Accordingly, existing legal authority demonstrates that the amount-in-controversy exceeds the sum of $75,000.00.

38. The Complaint also seeks "permanent loss of earnings and loss of earning capacity." (*Id.* ¶ 143.) Before Enock Benjamin allegedly died on April 3, 2020, he earned $22.00

per hour and working as an employee for JBS Souderton, Inc. and was scheduled to make a gross total amount of $45,760.00 in 2020. (Keller Dec. ¶ 8.) In 2019, Enock Benjamin earned the total sum of $47,698.43. (*Id.* ¶ 9 and Attachment 1 thereto.) Just considering Plaintiff's claim for loss of earnings and loss of earning capacity alone, the Complaint alleges damages in an amount exceeding $75,000.00. (*See id.* ¶¶ 8-11 and Attachments 1-2.)

39. Plaintiff also requests exemplary damages, which at least one court has determined are potentially recoverable under the Survival Act. *Dubose*, 125 A.3d at 1246.

40. In *Golden v. Golden*, the Third Circuit held that unless patently frivolous, "a request for punitive damages will generally satisfy the amount-in-controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." 382 F.3d 348, 354-355 (3d Cir. 2004).

41. Further, this Court, after making "reasonable deductions, reasonable inferences, or other reasonable extrapolations," should determine that it is facially apparent from the Complaint, by itself, that the case meets the $75,000.00 amount-in-controversy requirement. *See, e.g.*, *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 770 (11th Cir. 2010)). Here, the Complaint seeks, among other things, damages for Enock Benjamin's "pain and suffering[] and fear of impending death" (Compl. ¶ 142), "permanent loss of earnings and loss of earning capacity" (*id.* ¶ 143), "sustained permanent loss of enjoyment of life, loss of life's pleasures, and loss of life's hedonic pleasures" (*id.* ¶ 144), and "*large and various* expenses for medical treatment, hospital care and medicine rendered to decedent until the time of his death [as well as] various funeral, burial, and estate and administration expenses for which Plaintiff is entitled to compensation." (*Id.* ¶ 190 (emphasis added).) Collectively, the nature of Plaintiff's allegations combined are sufficient to show that the

jurisdictional amount-in-controversy is satisfied. *See Angus v. Shiley, Inc.*, 989 F.2d 142 (3d Cir. 1993); *Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007); *Roe*, 613 F.3d at 1060-1063 (collecting cases).

42. Based on the foregoing, the Complaint alleges that the amount-in-controversy exceeds the sum of $75,000.00, the jurisdictional amount required under 28 U.S.C. § 1332. It does not appear to a legal certainty that the amount-in-controversy falls below the applicable jurisdictional amount of $75,000.00. *See Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396-398 (3d Cir. 2004).

**B.   Plaintiff Fraudulently Joined JBS Souderton, Inc.**

43. The doctrine of fraudulent or wrongful joinder is an exception to the requirement that removal under 28 U.S.C. § 1332 be predicated solely upon complete diversity. *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (citation omitted).

44. Under this doctrine, diverse defendants may remove an action if they can establish that the non-diverse defendant was "fraudulently" or wrongfully joined solely to defeat diversity jurisdiction. *Id.*

45. Joinder is fraudulent if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Id.* (citation omitted); *see also Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992).

46. The Third Circuit has long adhered to the principle that fraudulent joinder should not be used to defeat diversity jurisdiction. *See Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (citing *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907) ("Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right.")).

47. Thus, if a district court determines that joinder of a party is fraudulent, "the court can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants." *Briscoe*, 448 F.3d at 216.

48. Pennsylvania law makes clear that there is no reasonable basis in fact or colorable ground supporting Plaintiff's claims against the Deceased's employer—JBS Souderton, Inc.—because those claims are either barred by the exclusivity provision of Pennsylvania's Workers' Compensation Act ("PWCA") or irretrievably fail for a lack of causation.

    **i.    If Plaintiff's Claims Rest on a Workplace-Related Injury, They Are Barred by the PWCA.**

49. If, as Plaintiff alleges, the Deceased contracted COVID-19 in the course of his employment by JBS Souderton, Inc., his claims against JBS Souderton, Inc. are barred under the PWCA. (Compl. ¶¶ 97, 154.)

50. The PWCA is the sole and exclusive means of recovery against employers for any injuries that are alleged to have occurred within the scope of employment. *Winterberg v. Transp. Ins. Co.*, 72 F.3d 318, 322 (3d Cir. 1995).

51. Section 481(a) of the PWCA states:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damage in any action at law or otherwise on account of injury or death . . . or occupational disease.

77 Pa. Stat. Ann. § 481(a).

52. The PWCA's exclusivity remedy is a "'historical quid pro quo employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility

of a larger damage verdict in a common law action.'" *Winterberg*, 72 F.3d at 322 (citing *Kuney v. PMA Ins. Co.*, 578 A.2d 1285, 1286 (1990)).

53. The Third Circuit has explained that "because of the historical background for Pennsylvania's workmen's compensation system, courts have been very cautious about permitting common law litigation matters arguably connected with work-related injuries." *Id.* at 322.

54. The Pennsylvania Supreme Court has also explained:

> [T]he comprehensive system of substantive, procedural, and remedial laws comprising the workers' compensation system should be the exclusive forum for redress of injuries in any way related to the workplace. The principle was established as long ago as 1950. This Court stated: 'A reading of this statute and its many amendments make it manifest that the legislation relating to workmen's compensation was designed and intended to establish exclusive jurisdiction, practice and procedure in all matters pertaining to such subject matter. *When the allegations of a claim have as their ultimate basis an injury compensable under the Workmen's Compensation Act, the claim must be considered within the framework of the statute.*"

*Kuney*, 578 A.2d at 1287 (emphasis added).

55. Nor does the fact that Plaintiff has couched two of his claims as intentional torts take his case outside the immunity bar of the PWCA. *Poyser v. Newman*, 522 A.2d 548, 551 (Pa. 1987); *see also Alston v. St. Paul Ins.*, 612 A.2d 421, 423-424 (Pa. 1992) (holding that the PWCA's exclusivity provision bars tort recovery for malicious and fraudulent conduct); *Wendler v. Design Decorators, Inc.*, 768 A.2d 1172, 1173-1176 (Pa. Super. Ct. 2001) (granting summary judgment in employer's favor even though the record showed the employer willfully disobeyed OSHA warnings resulting in the employee's death).

56. To the contrary, PWCA Section 481(a) extends not only to acts of negligence, but also to claims based on intentional, wanton, and willful misconduct. *See, e.g.*, *Kuney*, 578 A.2d at 1286-87 (barring fraud claims); *see also Winterburg*, 72 F.3d at 323.

57. In *Poyser v. Newman & Company, Inc.*, the Pennsylvania Supreme Court determined that the employer's immunity barred a civil action, even when the employee claimed that: (1) he was injured by a machine made unsafe by his employer's willful disregard of its employees' safety and federal and state safety regulations; and (2) the employer fraudulently misrepresented safety conditions to federal inspectors by concealing the defective machine from them at an inspection, which occurred approximately two weeks before the accident. 522 A.2d 548, 549 (Pa. 1987).

58. When Enock Benjamin died on April 3, 2020, JBS Souderton, Inc. was and has been a workers' compensation subscriber in the Commonwealth of Pennsylvania during the relevant time period alleged in the Complaint. (*See* Keller Dec. ¶ 12-13; *see also* Rockwell Dec. ¶¶ 3-4 and Attachment 1 thereto.)

59. Plaintiff asserts a wrongful death and survival action based on negligence, fraudulent misrepresentation, and intentional misrepresentation claims arising from what Plaintiff apparently believes to have been work-related injuries Enock Benjamin sustained while employed as a "union steward" at JBS Souderton, Inc.—the precise claims courts have consistently determined are barred by PWCA Section 481(a) as a matter of law.

60. Because PWCA Section 481(a) applies, the PWCA wholly precludes Plaintiff from asserting in a judicial forum the claims set forth in his Complaint. *See Leflar v. Gulf Creek Indus. Park # 2*, 515 A.2d 875, 879 (Pa. 1986).

### ii.  If Plaintiff's Claims Rest on a Non-Workplace-Related Injury, They State No Colorable Basis for Liability.

61. Alternatively, if Enock Benjamin did not contract COVID-19 in the course of his employment at JBS Souderton, Inc., but rather contracted it through community spread, Plaintiff has no colorable basis for pursuing a tort claim against any Defendant. *See McMahon v. Young*,

276 A.2d 534, 535 (Pa. 1971) ("to award damages for a particular condition to a plaintiff, it [the jury] must find as a fact that condition was legally caused by the defendant's conduct"); *see also* Pa. SSCJI 13.20 (Negligence Actions, Factual cause) ("[c]onduct is a factual cause of harm when the harm would not have occurred absent the conduct").

\* \* \*

62. The upshot for jurisdictional purposes is straightforward:  Enock Benjamin either contracted COVID-19 during the course of his employment at JBS Souderton, Inc., or he did not. If he did, Plaintiff's claims must be resolved in workers compensation proceedings, not in court; if he did not, then there is no colorable basis for seeking to impose liability on any Defendant, including his employer. Because Plaintiff's claims against JBS Souderton, Inc. lack a reasonable basis in fact and law, its citizenship should not be considered for diversity or removal purposes. *See Hogan v. Raymond Corp.*, 536 F. App'x 207, 210 (3d Cir. 2013).

**C.    Federal Question Jurisdiction Exists Over This Dispute.**

63. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 and *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Plaintiff's state-law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314); *Manning v. Merrill Lynch*, 772 F.3d 158, 163 (3d Cir. 2014). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14).

64. One essential question is embedded in each of Plaintiff's claims:  In the midst of a presidentially declared national emergency, how must America's meat processing facilities

balance the interests of safeguarding workplace health and safety with their ongoing obligation to feed the American people?  Any duty ascribed to Defendants unavoidably implicates the President's explicit directive regarding the safe operation of meat processing facilities during the pandemic, as well as federal policies governing the nation's food supply, national security, and economy.  *See* Exec. Order No. 13917, "Delegating Authority Under the Defense Production Act With Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19," 85 Fed. Reg. 26313 (Apr. 28, 2020) ("Food Supply Chain Order") (invoking authority under the Defense Production Act, 50 U.S.C. § 4501 *et seq.*).  All four of the *Grable* factors are satisfied here because the remedy Plaintiff seeks threatens to interfere with federal policies over matters of uniquely national importance.

### i. Plaintiff's Claims Necessarily Raise A Federal Issue.

65. The Supreme Court has "recognized for [more than] 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312.  Federal question jurisdiction may arise from an issue "embedded" in state-law claims, and does not require an asserted statutory violation.  *See id.* at 316–19; *Ali v. DLG Dev. Corp*, 283 F. Supp. 3d 347, 349 (E.D. Pa. 2017).

66. The exercise of jurisdiction is warranted in a variety of contexts where the application of state law may interfere with a federal interest in "getting the Government's work done."  *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 505, 509 (1988).  In keeping with this principle, courts have recognized such supervening federal interests in an array of cases, including

those that concern the design and procurement of military equipment,[2] responding to national emergencies,[3] and ensuring the integrity of interstate waterways.[4]

67. The Food Supply Chain Order dispels any doubt that a unique federal interest is implicated here. JBS Souderton, Inc. supplies "a scarce and critical material essential to the national defense," as defined by the Defense Production Act of 1950. *See* 85 Fed. Reg. 26313, 26313 (meat and poultry suppliers constitute "critical infrastructure during the national [COVID-19] emergency"). Indeed, Plaintiff *concedes* that JBS Souderton, Inc. and the scores of other meat and poultry processing facilities across the country play "an important role in the supply chain," and their "beef products fill the shelves of grocery stores across the United States." (Compl. ¶¶ 42–43.)

68. Plaintiff seeks to impose liability based on Defendants' alleged failure to mitigate the risk of COVID-19 transmission at a meat processing plant—precisely the conduct governed by the Food Supply Chain Order. (*Compare id.* ¶ 7 ("the JBS defendants ignored federal guidance and put plant workers in the crosshairs of a global pandemic"), *and* ¶ 36 ("meat processing plants pose specific challenges regarding physical distancing of workers that JBS needed to assess and accommodate before allowing work to continue"), *and* ¶ 154(a)-(pp), *with* 85 Fed. Reg. 26313, 26313 (ordering meat processors "continue operations consistent with the guidance for operations jointly issued by the CDC and OSHA" in light of the "dramatic toll" taken by "necessary mitigation measures").)

---

[2] *See Boyle*, 487 U.S. at 505, 509 (finding a "uniquely federal interest" in contracts for military helicopters); *see also Scrogin v. Rolls-Royce Corp.*, No. 3:10-CV-442, 2010 WL 3547706, at *3 (D. Conn. Aug. 16, 2010) (denying motion to remand under *Grable* where military helicopters contract implicated a "uniquely federal interest"); *McMahon v. Pres. Airways, Inc.,* 410 F. Supp. 2d 1189 (M.D. Fla 2006).

[3] *See In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 197 (2d Cir. 2008) (extending *Boyle*'s rationale "to the disaster relief context due to the unique federal interest in coordinating federal disaster assistance and streamlining the management of large-scale disaster recovery projects").

[4] *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 (1972) (pollution in interstate streams).

69. Thus, a state court's application of any standard of conduct on a meat processing facility contrary to that imposed by the federal government may compromise a unique federal interest and frustrate the government's capacity to impose a uniform rule. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 391 (3d Cir. 2002) (finding a "substantial question of federal law" sufficient to support federal question jurisdiction where plaintiff's claim required the court to resolve "an apparent clash" between two distinct rules of decision—a federal rule of procedure and an inconsistent federal appellate decision); *cf. Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, No. 5:20-cv-06063, 2020 WL 2145350, at *8 (W.D. Mo. May 5, 2020) (recognizing that referring a plaintiff's tort claims against a meat processing plant to OSHA is necessary to "ensure uniform national enforcement of the Joint [CDC and OSHA] Guidance").

  **ii. The Federal Issues Are Actually Disputed.**

70. In addition to identifying the "*presence* of a federal issue," the proponent of federal jurisdiction must also demonstrate "an actual disagreement about an interpretation of federal law that is material to the claims at issue." *See Merrell Dow Pharm. v. Thompson*, 478 U.S. 804, 813 (1986) (emphasis added); *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 414 (3d Cir. 2015); *Ali*, 283 F. Supp. 3d at 353–54. Plaintiff's claims include allegations that contradict federal policy or regulations. Accordingly, they necessarily raise a disputed federal issue which warrants the exercise of federal question jurisdiction. *See McKay v. City & Cty. of San Francisco*, No. 16-CV-03561, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016); *Bader Farms, Inc. v. Monsanto Co.*, 2017 WL 633815, at *3 (E.D. Mo. Feb. 16, 2017).

71. Plaintiff's claims are directly opposed to the federal government's actions and directives. For example, Plaintiff alleges Defendants were negligent for "failing to close the JBS Souderton Plant." (Compl. ¶¶ 154(f), (g), (q).) In contrast, the Food Supply Chain Order enjoins

meat processing facilities to remain open. 85 Fed. Reg. 26313, 26313 ("It is important that processors of beef, pork, and poultry … in the food supply chain continue operating and fulfilling orders to ensure a supply of protein for Americans."); *id.* (ordering the Secretary of Agriculture to "take all appropriate actions … to ensure that meat and poultry processors continue operations").

72. In addition, Plaintiff's Complaint invokes serial OSHA and CDC guidelines. Plaintiff asserts that Defendants failed to follow the March 2020 guidelines (*see* Compl. ¶¶ 23–26), but then seeks to impose liability based on an April 2020 guidance that contains different instructions and was issued nearly a month after Enock Benjamin's last day at the plant. (*See, e.g.*, *id.* ¶ 154(t) (claim that Defendants were negligent for "[f]ailing to perform temperature checks on workers").) Plaintiff's reliance on conflicting guidance separately supports the exercise of *Grable* federal question jurisdiction because this Court will need to reconcile the applicable federal standards. *See Scott v. Lance Aviation, Inc.*, No. 8:09-CV-986, 2010 WL 11507789, at *3 (M.D. Fla. Mar. 10, 2010) (denying remand because the court was required to determine what, if any, federal regulations applied and what conduct they required, whether a predecessor set of regulations controlled, "or how the provisions of the CARs and FARs can be reconciled with one another as they relate to [Defendant's] duty").

### iii. There Is a Substantial Federal Issue.

73. A federal issue is "substantial" if it "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. The Court must assess whether the federal government has a "strong interest" in the federal issue at stake, and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Grable*, 569 U.S. at 260–61 (citation omitted).

74. The Food Supply Chain Order explicitly confirms a substantial federal interest in creating a uniform standard of conduct for the meat processing industry during the national emergency, in light of an emerging patchwork of contradictory state rules. *See* 85 Fed. Reg. 26313 (federal authority invoked because reductions in processing capacity and/or state actions that have led to the closure of some facilities "may differ from or be inconsistent with interim guidance recently issued"); *see also Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 724 (5th Cir. 2017) ("the case affects 'an entire industry' rather than a few parties").

### iv. This Court's Determination Will Not Disturb the Balance of State and Federal Judicial Responsibilities.

75. Finally, courts must consider whether the exercise of federal question jurisdiction under *Grable* would "materially affect, or threaten to affect, the normal currents of litigation," such that a "flood of cases" would result on the federal docket. *See Grable*, 545 U.S. at 319; *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 258 (3d Cir. 2016). The narrowly rendered directive in the Food Supply Chain Order, limited to just meat and poultry business practices during the COVID-19 pandemic, allays concern about a "flood of cases" and weighs in favor of jurisdiction. Accordingly, this Court's determination of the substantial and disputed federal issues at the heart of this case would not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

## IV.   CONCLUSION

76. As demonstrated herein, removal of this dispute to this Court is proper because this Court would have had original jurisdiction of this matter under 28 U.S.C. §§ 1331 and/or 1332. Diversity jurisdiction exists because there is complete diversity of citizenship between Plaintiff and the properly named defendants and the amount-in-controversy exceeds the sum or value of

$75,000.00, exclusive of interest and costs.  The Court should exclude from consideration Plaintiff's fraudulent joinder of Enock Benjamin's employer, JBS Souderton, Inc., because the PWCA bars Plaintiff's claims as a matter of law and the PWCA deprives this Court of subject matter jurisdiction over Plaintiff's claims against JBS Souderton, Inc.

77. Additionally, federal question jurisdiction exists because the Complaint's allegations and controlling law demonstrate that Plaintiff's claims arise under the Constitution, laws, or treaties of the United States.

78. Finally, to the extent that the above bases for federal jurisdiction do not extend to one or more of Plaintiff's claims, this Court has supplemental jurisdiction over such claim or claims pursuant to 28 U.S.C. § 1367.

Dated:  June 2, 2020

Respectfully submitted,

*/s/ Molly E. Flynn*
Molly E. Flynn (Pa. ID No. 205593)
Mark D. Taticchi (Pa. ID No. 323436)
Rebecca L. Trela (Pa. ID No. 313555)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone:    (215) 988-2700
Facsimile:     (215) 988-2757

*Attorneys for Defendant*
*JBS USA Food Company*

## **CERTIFICATE OF SERVICE**

I, Molly E. Flynn, hereby certify that on June 2, 2020, I caused a true and correct copy of the foregoing Defendant JBS USA Food Company's Notice of Removal to be served upon counsel for Plaintiff via electronic case filing and electronic mail:

Robert J. Mongeluzzi
Steven G. Wigrizer
Jeffrey P. Goodman
Jason S. Weiss
Saltz Mongeluzzi & Bendesky P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103

*Attorneys for Plaintiff*

/s/ Molly E. Flynn

Molly E. Flynn

*Attorney for Defendant*
*JBS USA Food Company*