# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
| --- |
| **MAY 2020** |
| E-Filing Number: 2005005845 |
| **000370** |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| FERDINAND BENJAMIN | JBS S.A. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| 957 ANCHOR STREET<br>PHILADELPHIA PA 19124 | AVENIDA BRIG FARIA LIMA  2.391 2 ANDAR JD<br>PAULISTANO<br>SAO PAULO |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| FERDINAND BENJAMIN | JBS USA FOOD COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| 957 ANCHOR STREET<br>PHILADELPHIA PA 19124 | 1770 PROMONTORY CIRCLE<br>GREELEY CO 80634 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
|  | JBS USA HOLDINGS, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
|  | 1770 PROMONTORY CIRCLE<br>GREELEY CO 80634 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
| --- | --- | --- |
| 2 | 5 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal<br>[ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS |
| --- | --- |
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration  [ ] Mass Tort  [ ] Commerce  [ ] Settlement<br>[X] Jury  [ ] Savings Action  [ ] Minor Court Appeal  [ ] Minors<br>[ ] Non-Jury  [ ] Petition  [ ] Statutory Appeals  [ ] W/D/Survival<br>[ ] Other: |

CASE TYPE AND CODE

2O - PERSONAL INJURY - OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED**
**PRO PROTHY**

MAY **07** 2020

**A. SILIGRINI**

IS CASE SUBJECT TO
COORDINATION ORDER?

YES          NO

---

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: FERDINAND BENJAMIN , FERDINAND BENJAMIN
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
| --- | --- |
| ROBERT J. MONGELUZZI | ONE LIBERTY PLACE 52ND  FLOOR<br>1650 MARKET ST.<br>PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER |
| --- | --- |
| (215)496-8282 | (215)496-0999 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
| --- | --- |
| 36283 | VSmith@smbb.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
| --- | --- |
| *ROBERT MONGELUZZI* | Thursday, May 07, 2020, 08:34 am |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

    1. JBS S.A.
       AVENIDA BRIG FARIA LIMA  2.391 2 ANDAR JD PAULISTANO
       SAO PAULO
    2. JBS USA FOOD COMPANY
       1770 PROMONTORY CIRCLE
       GREELEY CO 80634
    3. JBS USA HOLDINGS, INC.
       1770 PROMONTORY CIRCLE
       GREELEY CO 80634
    4. JBS SOUDERTON, INC.
       ALIAS: C/O CORPORATION SERVICE COMPANY
       2595 INTERSTATE DRIVE SUITE 103
       HARRISBURG PA 17110
    5. PILGRIM□S PRIDE CORPORATION
       ALIAS: C/O CORPORATION SERVICE COMPANY
       2595 INTERSTATE DRIVE SUITE 103
       HARRISBURG PA 17110

**SALTZ MONGELUZZI & BENDESKY P.C.**
BY:   ROBERT J. MONGELUZZI/STEVEN G. WIGRIZER
        JEFFREY P. GOODMAN/JASON S. WEISS
Identification No.: 36283/30396/309433/310446
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282



ATTORNEY FOR PLAINTIFF

Filed and Attested by the
Office of Judicial Records
02 JUN 2020 04:34 pm
A. SILIGRINI

| | |
|---|---|
| **FERDINAND BENJAMIN, Individually and as the Personal Representative of the Estate of ENOCK BENJAMIN, Deceased** <br> 957 Anchor Street <br> Philadelphia, PA 19124 <br><br> *Plaintiff* <br><br> **v.** <br><br> **JBS S.A.** <br> Avenida Brig Faria Lima 2.391 2 <br> Andar Jd Paulistano <br> Sao Paulo, SP 01452-000 Brazil <br><br> *And* <br><br> **JBS USA FOOD COMPANY** <br> 1770 Promontory Circle, <br> Greeley, CO 80634 <br><br> *And* <br><br> **JBS USA HOLDINGS, INC.** <br> 1770 Promontory Circle <br> Greeley, CO 80634 <br><br> *And* | **PHILADELPHIA COUNTY COURT OF COMMON PLEAS LAW DIVISION** <br><br><br> **MAY TERM, 2020** <br><br> **NO.: _____** <br><br><br> **JURY OF 12 DEMANDED** <br><br><br> **THIS IS NOT AN ARBITRATION MATTER** |

**JBS SOUDERTON, INC.**

c/o Corporation Service Company

2595 Interstate Drive, Suite 103

Harrisburg, PA 17110

*And*

**PILGRIM'S PRIDE CORPORATION**

c/o Corporation Service Company

2595 Interstate Drive, Suite 103

Harrisburg, PA 17110

*Defendants*

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**PHILADELPHIA BAR ASSOCIATION**
LAWYER REFERRAL AND INFORMATION SERVICE
1101 MARKET STREET
PHILADELPHIA, PA 19107
TELEPHONE: (215) 238-6333

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparecía escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará midas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.
LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATA-MENTE. SI NO TIENE ABOGADO O SINO TIENE EL DI-NERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEPHONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUDE CONSEGUIR ASISTENCIA LEGAL.

**ASOCIACIÓN DE LICENCIADOS DE FILADELFIA**
SERVICIO DE REFERENCIA E INFORMACIÓN LEGAL
1101 CALLE DE MERCADO
FILADELFIA, PA 19107
TELÉFONO: (215) 238-6333

2

## COMPLAINT – CIVIL ACTION

### *Introduction*

1.      This wrongful death and survival action concerns the negligent, reckless, and outrageous conduct of JBS, the largest beef processing company in the world, because it elected to pursue profits over safety during a global pandemic.

2.      On April 3, 2020, Enock Benjamin died of respiratory failure caused by the pandemic virus, COVID-19.


,

3.      At the time of his death, Mr. Benjamin was a union steward at the JBS meat processing plant in Souderton, PA.

4.      Enock Benjamin was known as the "go-to-man" for JBS Souderton employees and as a "champion of the people" by his colleagues.

5.      Co-workers have also publicly described Mr. Benjamin as a man "who did so much to defend the rights of his colleagues . . . he loved to work, and he worked until the last moment he could."

6.      Enock Benjamin's death was the predictable and preventable result of the JBS Defendants' decisions to ignore worker safety.

Case ID: 200500370

7.     The JBS Defendants ignored federal guidance and put plant workers in the crosshairs of a global pandemic.

8.     Despite the known risks regarding COVID-19, prior to shutting down the plant on March 30, 2020, the JBS Defendants: (1) failed to provide sufficient personal protective equipment; (2) forced workers to work in close proximity; (3) forced workers to use cramped and crowded work areas, break areas, restrooms, and hallways; (4) discouraged workers from taking sick leave in a manner that had sick workers in fear of losing their jobs; and (5) failed to properly provide testing and monitoring for individuals who have may have been exposed to the virus that causes COVID-19.

9.     Instead, at the Souderton facility where Mr. Benjamin worked, JBS increased production during March 2020, adding a "Saturday Kill" to capitalize on increased demand caused by public panic purchases of ground meat.

10.    During this critical timeframe in March 2020, Mr. Benjamin contracted COVID-19 while working at JBS Souderton because the JBS Defendants inexplicably failed to take proper safety precautions to protect workers.

11.    By keeping the Souderton plant open without providing the proper and recommended safety precautions, JBS intentionally misrepresented the safety of the facility.

12.    By choosing profits over safety, JBS demonstrated a reckless disregard to the rights and safety of others, including Enock Benjamin.

**FACTS COMMON TO ALL COUNTS**

*A Global Pandemic*

13.    COVID-19 is an infectious respiratory disease which is caused by a virus known as "the novel coronavirus."

14.    The virus which caused COVID-19 is highly contagious.

4

Case ID: 200500370

15.     The virus spreads mainly person-to-person, primarily through coughs or sneezes from an infected person in close proximity to another.

16.     The virus is especially dangerous because it can be spread by people who are asymptomatic or pre-symptomatic.

17.     For these reasons, the preferred mechanism to combat the virus has been widespread "stay-at-home" orders to prevent being exposed to the novel coronavirus.

18.     On January 21, 2020, the United States reported its first case of the novel coronavirus.

19.     By this time, it was widely reported that the virus had already spread across Asia and Europe.

20.     On January 30, 2020, the United States reported its first case of COVID-19 acquired via community spread.

21.     In this context, it has been stated that "community spread" means "that people have been infected with the virus in an area, including some who are not sure how or where they became infected."

22.     On January 31, 2020, the World Health Organization ("WHO") declared COVID-19 a "public health emergency of international concern."

23.     On March 9, 2020, with over 500 COVID-19 infections in the United States, the CDC published federal guidelines for workers.

24.     These guidelines included recommendations for social distancing of at least 6 feet, and the use of Personal Protective Equipment ("PPE") for workers.

5

Case ID: 200500370

25.     The same day, March 9, 2020, OSHA released its own guidelines, recommending that companies should offer surgical masks or respirators to workers who could be infected with COVID-19, especially those that worked in close quarters:

**Personal Protective Equipment (PPE)**

Employers are obligated to provide their workers with PPE needed to keep them safe while performing their jobs. The types of PPE required during a COVID-19 outbreak will be based on the risk of being infected with SARS-CoV-2 while working and job tasks that may lead to exposure.

*OSHA "Guidance on Preparing Workplaces for COVID-19," March 9, 2020*

26.     Despite this guidance, the JBS Defendants did not obtain masks or other PPE for their workers until April 2, 2020, when there already were over 240,000 confirmed COVID-19 infections in the United States, and 5,794 confirmed deaths.

27.     Despite the clear danger that COVID-19 posed for its workers, the JBS Defendants did not mandate the use of masks and/or PPE for their workers until April 14, 2020 when there were already 585,909 confirmed COVID-19 infections in the United States, and 23,577 confirmed deaths.

28.     At the time of this filing, there are at least 1,168,896 confirmed cases in the United States with over 70,000 deaths attributable to COVID-19 during this pandemic.

### Meat Processing Plants – A Melting Pot for the Spread of Infection

29.     Meat processing plants are known to be "notoriously dangerous."

30.     Meatpacking plants present unique safety issues because of the proximity within which employees work ("elbow-to-elbow") using cutting tools and in a challenging environment.

31.     In 2009, the spread of the H1N1 virus put meat processing plants on notice of the dangerous conditions that the spread of airborne virus posed to their workers.

6

32.     As recently as 2016, regulations were promulgated to promote worker's safety to protect against airborne illness at the plants.

33.     The enhanced coverage of meat processing plants that has occurred as a result of the COVID-19 pandemic highlighted the pre-existing dangerous conditions which workers were exposed to at these plants.

34.     One report quotes plant workers as stating that "we're modern slaves."

35.     Meat processing plant workers have been quoted as stating that "the workers are being sacrificed" in recent media coverage.

36.     Meat processing plants pose specific challenges regarding physical distancing of workers that JBS needed to assess and accommodate before allowing work to continue.

### *Pennsylvania's Plants – Most Infected in the Nation*

37.     As of May 1, 2020, Pennsylvania had more recorded coronavirus cases among meat plant workers than any other state.

38.     As of that same date, there were 858 confirmed COVID-19 cases from workers at meat processing plants in Pennsylvania.

39.     That number will steadily increase as time progresses, and tragically, Enock Benjamin's death will not be the last.

### *The JBS Defendants*

40.     Defendants, JBS S.A., JBS USA Food Company, JBS USA Holdings, Inc., JBS Souderton, Inc., and Pilgrim's Pride Corporation, are herein collectively referred to as the "JBS Defendants" and/or "JBS".

41.     JBS, a multinational corporation, is the world's largest meat processor.

42.     JBS beef products fill the shelves of grocery stores across the United States.

Case ID: 200500370

43.    With such an important role in the food supply chain, safety should be of paramount concern to JBS.

44.    However, based upon publicly available information, JBS has consistently placed profits over safety.

45.    A review of OSHA statistics for 14,000 participating companies described "17,533 incidents of the most severe work-related injuries ['work-related amputations or hospitalizations'] during the period from January 2015 through September 2016."

46.    JBS had the sixth (6th) most severe injuries reported from that survey.

### *JBS Souderton Plant*

47.    In 2008, Enock Benjamin started working at the JBS Plant in Souderton, PA.

48.    JBS Souderton is known as "a big player in the Eastern beef market" because JBS USA claims that it is the largest beef facility east of Chicago.

49.    JBS Souderton has approximately 1,400 employees and specializes in beef processing and packaging.

50.    Every day hundreds of workers report to the plant floor for work in close proximity involving extremes of temperature, dampness, and hazardous footing.

51.    A large percentage of the workers are immigrants, which results in company-wide communications regularly required to be translated in Spanish, Arabic, and Haitian Creole.

52.    Enock Benjamin was of Haitian descent.

53.    Workers stand only a few feet apart and, because of the volume of the machines at The Plant, are required to stand within inches of each other to communicate.  A typical meat packing and processing line is depicted below:

8

Case ID: 200500370



*The COVID-19 Pandemic in the United States*

54.     Recently, Carmen Dominguez, a union steward at the JBS Souderton facility, described the working conditions as follows:

> *"On a normal day, work at a meatpacking plant is not easy. The slaughterhouse is boiling hot. People who aren't used to the temperature can feel as if they are experiencing high blood pressure. The freezer is super cold and will amplify any flulike symptoms. Workers wear as many layers as they can to stay warm, but it is difficult."*

55.     In 2019, a worker died on the job at JBS Souderton, resulting in OSHA making workplace safety recommendations for the facility.

56.     Based upon information and belief, the culture at JBS Souderton resulted in workers coming to work sick for fear of losing their job if missing multiple days of work.

57.     Based upon information and belief, by early March the virus was firmly established in the Souderton plant.

58.     The March 9, 2020 OSHA guidance specifically instructed workplaces to send sick workers home:

Case ID: 200500370

**Prepare to Implement Basic Infection Prevention Measures**

■ Encourage workers to stay home if they are sick.

■ Employers should develop policies and procedures for employees to report when they are sick or experiencing symptoms of COVID-19.

*OSHA "Guidance on Preparing Workplaces for COVID-19," March 9, 2020*

59.     Despite the skyrocketing risk of COVID-19 infections for workers, the JBS Defendants ignored the safety of workers and required them to report for duty each day in cramped conditions and without adequate PPE.

60.     Despite these known risks, the JBS Defendants refused to close their plants or otherwise limit the number of workers reporting for duty each day.

61.     Based upon information and belief, as of March 2020 many employees were led to believe that the individuals who were out sick had the flu, not COVID-19.

62.     Based upon information and belief, upon learning of the first positive COVID individual in the facility in early March 2020, JBS failed to change its policies and procedures.

63.     Based upon information belief, instead of implementing proper safety policies and procedures, due to increased business demands in March 2020, JBS Souderton added a "Saturday Kill" to meet increased demand in ground beef sales.

64.     Based upon information and belief, after the first positive COVID-19 result, JBS sent a letter to "Souderton Team Members" stating that "one of our team members has tested positive for COVID-19 after exhibiting flu-like symptoms."

65.     Based upon information and belief, the only employees who were given off work after this test were "team members who were in direct contact with the individual for extended periods of time."

10

Case ID: 200500370

66.     Based upon information and belief, after the first positive COVID-19 result, JBS Souderton team members were informed that "Our Souderton facility will remain open."

67.     One union steward described publicly described the conditions in the plant prior to the shut down as follows:

> *"Before this closure, people had started to panic. Social distancing was limited. Employees didn't cover their mouths. In meatpacking plants, workers are piled up on top of one another, often touching because there are so many of us. Many decided to stay at home on leave because they were afraid of becoming infected or of spreading the coronavirus to their families."*

68.     On March 27, 2020, the Souderton facility closed for sanitation after multiple workers had fallen ill.

69.     At that time, there were over 2,000 confirmed cases of COVID-19 in Pennsylvania.

70.     On March 30, 2020, JBS USA stated publicly that it was "temporarily" reducing production after several senior management team members displayed flu-like symptoms:  "The JBS Souderton, Pa., beef production facility has temporarily reduced production because several senior management team members have displayed flu-like symptoms."

71.     As of this date, JBS USA publicly claimed that it only had "four or five" confirmed COVID-19 cases among its hourly workers at the time of closure.

72.     JBS spokesperson Cameron Bruett stated that the shutdown was "out of an abundance of caution[.]"

73.     Based upon information and belief, workers were outspoken about the lack of safety equipment prior to the plant shutting down.

74.     Based upon information and belief, employees did complain about the lack of masks prior to the shutdown.

11

Case ID: 200500370

75.     Based upon information and belief, workers complained about bring COVID-19 home to their families before the shutdown.

76.     Based upon media reports, by April 2, 2020, there were nineteen (19) employees that were confirmed to test positively at the Souderton plant.

### COVID-19 Infections at all JBS Plants

77.     COVID-19 spread quickly through the JBS Defendants' meat packing plants.

78.     Despite the clear and present danger the virus presented, JBS Defendants kept their facilities across the United States open or shuttered them only temporarily, even after hundreds of workers fell ill and others died.

79.     Based upon information and belief, the JBS Defendants had a 'work while sick' policy.

80.     The JBS Defendants did not require workers experiencing COVID-19 symptoms to report their illness to their superiors.

81.     The JBS Defendants did not require these workers to self-quarantine at home, despite federal guidance to the contrary.

82.     In a demonstration of placing profits over safety, the JBS Defendants ignored the health of their vulnerable workers and did not shut any plants prior to March 30, 2020 despite a mountain of evidence of a public safety concern of unforeseen magnitude.

83.     JBS operates scores of beef plants nationwide.

84.     JBS USA has experienced COVID-19 outbreaks at least at seven (7) of those plants; Souderton, Pennsylvania; Greeley, Colorado; Plainwell, Michigan; Green Bay, Wisconsin; Cactus, Texas; Worthington, Minnesota and Grand Island, Nebraska.

12

Case ID: 200500370

85. On April 14, 2020, JBS USA had to shut down the facility in Greeley, CO because of the coronavirus outbreak.

86. "While the Greeley beef facility is critical to the U.S. food supply and local producers, the continued spread of coronavirus in Weld County requires decisive action," said Andre Nogueira, CEO of JBS USA.

87. However, according to media reports, despite experiencing "increased absenteeism" at other plants, JBS continued to operate "the majority of its facilities across the country at or near capacity."

88. A simultaneously released statement on behalf of JBS addressed absenteeism as follows: "When COVID-19 is prevalent in the community, fear is heightened, absenteeism rises, and the challenge of keeping the virus out becomes greater . . . when absenteeism levels become too high, facilities cannot safely operate."

### *The Death of Enock Benjamin*

89. Based upon information and belief, up to and including March 27, 2020, workers at JBS Souderton were still not required to wear masks and/or other PPE, despite CDC and OSHA guidance to the contrary.

90. Based upon information and belief, up to and including March 27, 2020, workers at JBS Souderton were still required to work within 6 feet of one another, despite CDC and OSHA guidance to the contrary.

91. Based upon information and belief, up to and including March 27, 2020, workers at JBS Souderton were not required to report to their superiors if they were experiencing COVID-19 symptoms.

Case ID: 200500370

92.     Based upon information and belief, when Enock Benjamin last arrived for work at the JBS Souderton Plant on March 27, 2020, a number of his co-workers had already become infected.

93.     On March 27, 2020, Enock Benjamin left JBS Souderton after experiencing cough-like symptoms.

94.     Over the next week, Enock Benjamin's condition continued to worsen and breathing became nearly impossible.

95.     On April 3, 2020, Enock Benjamin's son, Ferdinand, called EMTs to assist Enock, who was unable to breathe.

96.     Enock Benjamin died in his son's arms before the ambulance arrived.

97.     An autopsy report confirmed the Enock Benjamin died from respiratory complications related to COVID-19.

98.     Mr. Benjamin's death was the predictable and preventable result of the JBS Defendants' failures to consider the safety of their workers.

99.     The Defendants knew, or in the exercise of a reasonable degree of care, should have known that if OSHA and CDC guidance were not followed, workers would become infected with and could succumb to COVID-19.

100.    Instead, the JBS Defendants placed profits over safety.

101.    As a result of the JBS Defendants' outrageous, reckless, and grossly negligent actions which demonstrated a total disregard for the workers' safety, Enock Benjamin became infected with COVID-19 at JBS Souderton.

102.    Mr. Benjamin died only days after leaving JBS Souderton for the last time.

14

Case ID: 200500370

103.    The JBS Defendants actions demonstrated a knowing willingness to sacrifice the health of Mr. Benjamin and others for its' own corporate greed.

### *Present Safety Conditions at JBS Souderton*

104.    On April 20, 2020, the JBS Souderton plant re-opened in Pennsylvania.

105.    Based upon information and belief, JBS provided masks, a shield, and gloves upon re-opening.

106.    JBS has failed to state publicly why these materials were not provided at JBS Souderton prior to the March 30, 2020 shutdown.

107.    Based upon information and belief, upon re-opening JBS is <u>not</u> regularly or consistently taking employee temperatures.

108.    Moreover, based upon information and belief, upon reopening JBS was still <u>not</u> providing COVID-19 testing for all those at the facility.

109.    A JBS Spokesperson stated that any worker who does not qualify as high-risk, but is concerned about contracting COVID-19 "can choose to self-quarantine and take unpaid leave."

110.    JBS' failure to even presently enforce necessary safety policies and procedures demonstrate a continued failure to respect and appreciate the threat of harm to the public that the continued unsafe operation of meat plants pose.

### *The Parties*

111.    Plaintiff, *Ferdinand Benjamin*, is an adult individual and a citizen of the Commonwealth of Pennsylvania residing at the above captioned address.

Case ID: 200500370

112.    Ferdinand Benjamin brings this suit as the Personal Representative[1] of *the Estate of Enock Benjamin,* on his own behalf and on behalf of all statutory beneficiaries, and as the personal representative of Enock Benjamin.

113.    Enock Benjamin was, at all relevant times, an adult citizen of the Commonwealth of Pennsylvania, residing in Philadelphia County.

114.    Defendant, *JBS S.A.*, is a corporation organized and existing under the laws of Brazil, with a principal place of business at the above captioned address.

115.    At all times relevant to this cause of action, JBS S.A. was engaged in business within the Commonwealth of Pennsylvania on a regular, systematic, continuous, and substantial basis.

116.    At all times relevant to this cause of action, JBS S.A. regularly conducted business in Philadelphia County.

117.    At all relevant times, JBS S.A. was acting by and through its agents, servants and/or employees, who were acting within the course and scope of their agency, service, and employment with JBS S.A.

118.    Defendant, *JBS USA Food Company* ("JBS USA"), is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at the above captioned address.

119.    At all times relevant to this cause of action, JBS USA was engaged in business within the Commonwealth of Pennsylvania on a regular, systematic, continuous, and substantial basis.

---

[1]    Due to COVID-19 restrictions, at present the Register of Wills of Philadelphia County is only entertaining emergency applications. Letters of Administration will be obtained at the first reasonable opportunity.

Case ID: 200500370

120.   At all times relevant to this cause of action, JBS USA regularly conducted business in Philadelphia County.

121.   At all relevant times, JBS USA was acting by and through its agents, servants and/or employees, who were acting within the course and scope of their agency, service, and employment with JBS USA.

122.   Defendant, *JBS USA Holdings, Inc*. ("JBS Holdings"), is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at the above captioned address.

123.   At all times relevant to this cause of action, JBS Holdings was engaged in business within the Commonwealth of Pennsylvania on a regular, systematic, continuous, and substantial basis.

124.   At all times relevant to this cause of action, JBS Holdings regularly conducted business in Philadelphia County.

125.   At all relevant times, JBS Holdings was acting by and through its agents, servants and/or employees, who were acting within the course and scope of their agency, service, and employment with JBS Holdings.

126.   Defendant, *JBS Souderton, Inc*. ("JBS Souderton"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with an address for service at the above captioned address.

127.   At all times relevant to this cause of action, JBS Souderton was engaged in business within the Commonwealth of Pennsylvania on a regular, systematic, continuous, and substantial basis.

Case ID: 200500370

128.    At all times relevant to this cause of action, JBS Souderton regularly conducted business in Philadelphia County.

129.    At all relevant times, JBS Souderton was acting by and through its agents, servants and/or employees, who were acting within the course and scope of their agency, service, and employment with JBS Souderton.

130.    Defendant, *Pilgrim's Pride Corporation* ("Pilgrim's Pride"), is a corporation organized and existing under the laws of the state of Delaware, with an address for service at the above captioned address.

131.    At all times relevant to this cause of action, Defendant Pilgrim's Pride was engaged in business within the Commonwealth of Pennsylvania on a regular, systematic, continuous, and substantial basis.

132.    At all times relevant to this cause of action, Defendant Pilgrim's Pride regularly conducted business in Philadelphia County.

133.    At all relevant times, Defendant Pilgrim's Pride was acting by and through its agents, servants and/or employees, who were acting within the course and scope of their agency, service, and employment with Pilgrim's Pride.

134.    Upon information and belief, Defendant JBS USA Holdings, Inc. is a wholly-owned subsidiary of Defendant JBS S.A.

135.    Upon information and belief, Defendant JBS USA Food Company is a wholly-owned subsidiary of JBS USA Holdings, Inc.

136.    Upon information and belief, Defendant JBS Souderton, Inc. is a wholly-owned subsidiary of Defendant JBS USA Food Company.

18

Case ID: 200500370

137.    Upon information and belief, Defendant Pilgrim's Pride is a subsidiary of Defendant JBS USA Holdings, Inc.

138.    Defendants, JBS S.A., JBS USA Food Company, JBS USA Holdings, Inc., JBS Souderton, Inc., and Pilgrim's Pride Corporation, owned, operated, managed, and otherwise controlled the meat packing plant at 249 Allentown Road, Souderton, PA 18964 ("The JBS Souderton Plant").

139.    Defendants, JBS S.A., JBS USA Food Company, JBS USA Holdings, Inc., JBS Souderton, Inc., and Pilgrim's Pride Corporation, by and through their agents, servants, and/or employees, collectively and individually made decisions related to worker health, safety, protection, and sanitation in light of the COVID-19 pandemic.

140.    The JBS Defendants are, collectively, the world's largest meat processor and own, operate, manage and otherwise control more than sixty (60) meat processing plants in the United States.

141.    As a direct result of the carelessness, negligence, recklessness, gross negligence, and/or other liability producing conduct of the Defendants, Plaintiff's decedent, Enock Benjamin, suffered illness and injuries that led to his death.

142.    Mr. Benjamin sustained conscious pain and suffering, and fear of impending death.

143.    Mr. Benjamin sustained a permanent loss of earnings and loss of earning capacity.

144.    Mr. Benjamin sustained permanent loss of enjoyment of life, loss of life's pleasures, and loss of life's hedonic pleasures.

Case ID: 200500370

145.    Mr. Benjamin has been permanently prevented from performing all his usual duties, occupations, recreational activities, and avocations, all to his and his beneficiaries' loss and detriment.

146.    The outrageous conduct described herein warrants the imposition of punitive damages to deter the JBS Defendants and meat processing plants that operate in Pennsylvania and across the country from placing profits over the safety of their workers, their workers' families, and the public at large.

**COUNT I**
*Plaintiff, the Estate of Enock Benjamin v. The JBS Defendants*
**NEGLIGENCE**

147.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference.

148.    At all relevant times, the JBS Defendants owned, operated, maintained and otherwise controlled the JBS Souderton Plant, and controlled and supervised the work being done at the Plant.

149.    Specifically, the JBS Defendants controlled and supervised all safety precautions and procedures at the Plant, including those related to COVID-19 protection and prevention.

150.    Control over the operations and safety decisions at the Souderton Plant were not limited to JBS Souderton, Inc. Instead, key decisions were controlled by corporate representatives at the parent level.

151.    The specific decisions related to whether or not to provide PPE, whether or not to properly distance workers, and whether or not to take other measures to prevent the spread of COVID-19 at the Souderton Plaint were controlled by the corporate leaders in Colorado and Brazil.

Case ID: 200500370

152.   In connection with their control and supervision of the Plant, the JBS Defendants developed plans, recommendations, guidance, and safety procedures and specifications for performance of work at the Plant.

153.   The JBS Defendants, having possession and control of the Plant and the work being done there, owed a duty to all those working at the Plant, including Enock Benjamin, a business invitee, to provide a reasonably safe work environment, free from unreasonable and dangerous hazards.

154.   The negligence, gross negligence, carelessness and recklessness of the JBS Defendants, their agents, servants, and/or employees, which were the cause of Enock Benjamin's death, consisted of, but was not limited to, the following:

    a.   Ignoring the risk of COVID-19 infection to workers at the JBS Souderton Plant;

    b.   Failing to provide workers with any equipment to help prevent the spread of COVID-19 at The Plant;

    c.   Intentionally ignoring the fact that workers at the JBS Souderton Plant were infected with and/or were displaying symptoms consistent with COVID-19;

    d.   Failing to provide appropriate PPE at JBS Souderton prior to March 30, 2020

    e.   Failing to provide workers with any equipment to help prevent the spread of COVID-19 at The Plant;

    f.   Failing to close the JBS Souderton Plant, despite the fact that the JBS Defendants knew, or should have known, that workers at the plant were suffering from COVID-19;

Case ID: 200500370

g.  Failing to close the JBS Souderton Plant, despite the fact that the JBS Defendants knew, or should have known, that workers at the plant were suffering from symptoms consistent with COVID-19;

h.  Ignoring federal guidance from the CDC and OSHA by not mandating the use of masks and PPE at the JBS Souderton Plant;

i.  Ignoring federal guidance from the CDC and OSHA by not mandating and/or enforcing social distancing guidelines at the JBS Souderton Plant;

j.  Ignoring federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill report their symptoms to their superiors;

k.  Ignoring federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill stay home from work and self-quarantine;

l.  Requiring workers to stand less than 6 feet apart;

m.  Failing to implement policies and procedures that mandated workers kept 6 feet apart;

n.  Failing to provide workers with masks and/or PPE;

o.  Failing to provide workers with clear guidelines for social distancing;

p.  Failing to reduce the numbers of workers per shift at the JBS Souderton Plant, despite the fact that the JBS Defendants knew, or should have known, that workers in close proximity to one another were more prone to infection;

q.  Refusing to close the JBS Souderton Plant entirely in a timely fashion, even though the JBS Defendants knew workers at other JBS Plants across the country had come infected with COVID-19;

Case ID: 200500370

r.   Enforcing and/or maintaining a formal and/or informal 'work while sick' policy at the JBS Souderton Plant;

s.   Failing to properly sanitize or otherwise disinfect the JBS Souderton Plant, despite the fact that workers at the plant were falling ill;

t.   Failing to perform temperature checks on workers arriving at the JBS Souderton Plant before they were allowed inside the Plant;

u.   Violating federal and state guidelines and requirements related to COVID-19 prevention in the workplace;

v.   Violating OSHA regulations, including OSHA 1910.132, related to the use of PPE;

w.   Breaching their duties under various sections of the Restatement (Second) of Torts, including, but not limited to, § 340, *et seq.*; § 341, *et seq.*; and § 500, *et seq.*

x.    Failing to provide Enock Benjamin with a safe place to work;

y.   Allowing workers at the JBS Souderton Plant, including Enock Benjamin, to become infected by COVID-19 while working at The Plant;

z.   Failing to properly train and supervise their employees and employees of subcontractors about the danger posed by COVID-19 and the necessary methods to prevent infection;

aa. Failing to properly train and supervise their employees and employees of subcontractors about federal and state guidelines regarding COVID-19 and federal and state guidelines to prevent COVID-19 infection;

bb. Failing to warn Enock Benjamin and other workers at the JBS Souderton Plant of the danger posed by COVID-19;

23

Case ID: 200500370

cc. Failing to adopt, enact, employ, and enforce proper and adequate safety programs, precautions, procedures, measures, and plans;

dd. Failing to provide workers with safety equipment;

ee. Failing to provide workers with adequate safety equipment;

ff. Failing to properly supervise and inspect the work being done at the JBS Souderton Plant;

gg. Failing to prevent workers at the JBS Souderton Plant from being infected by COVID-19.

hh. Failing to properly train supervisors and managers in determining when to shut down the plant due to a safety concerns;

ii. Failing to provide proper training on how to combat an airborne virus;

jj. Failing to hire and/or select appropriate individuals for managerial positions;

kk. Failing to conduct appropriate safety surveys of the Plant;

ll. Failing to hire appropriate consultants for how to respond to an airborne virus;

mm.        Failing to timely obtain appropriate PPE materials to protect workers.

nn. Failing to implement proper policies and/or procedures for shutting the Plant down in the face of widespread virus/pandemic;

oo. Failing to properly consider the safety of members of the public that would come into contact with those who worked at the facility; and

pp. Failure to express due care under the circumstances described herein.

155.    The Defendants' actions and/or inactions were substantial factors and/or factual causes and/or increased the risk of harm to Plaintiff's decedent.

Case ID: 200500370

156.    The acts and omissions set forth herein were done in a negligent, grossly negligent, willful, reckless, and wanton fashion with a conscious indifference to the rights of members of the public generally, and Plaintiff's decedent in particular.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and/or severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, delay damages pursuant to Pa.R.C.P. 238, interest, and allowable costs of suit, and brings this action to recover the same.

**COUNT II**
*Plaintiff, the Estate of Enock Benjamin v. The JBS Defendants*
**FRAUDULENT MISREPRESENTATION**

157.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference.

158.    The JBS Defendants owed lawful business invitees at the JBS Souderton Plant, including Enock Benjamin, the highest duty of care.

159.    The JBS Defendants knew that workers at the JBS Souderton Plant had become infected with COVID-19, and/or were displaying symptoms consistent with COVID-19, prior to closing The Plant on March 30, 2020.

160.    The JBS Defendants knew that workers at the JBS Souderton Plant were especially susceptible to COVID-19, and knew that once one worker was infected, the virus was likely to spread to others.

161.    Despite this knowledge, the JBS Defendants did not warn workers that others at the JBS Souderton Plant had become infected with COVID-19 and/or were displaying symptoms consistent with COVID-19 prior to March 27, 2020.

25

Case ID: 200500370

162.    Despite this knowledge, the JBS Defendants directly misrepresented to workers that there was no risk of infection and/or that the workers were unlikely to become infected and/or deliberately withheld their knowledge of workers at The Plant becoming infected with COVID-19.

163.    The JBS Defendants fraudulently misrepresented the risk of infection to other workers at The Plant to induce those workers to continue their employment at The Plant.

164.    The JBS Defendants fraudulently misrepresented the risk of infection to other workers at The Plant to induce those workers to continue making the JBS Defendants profitable.

165.    The JBS Defendants willfully and intentionally withheld their knowledge of COVID-19 infections at the JBS Souderton Plant.

166.    Workers at the JBS Souderton Plant, including Enock Benjamin, relied on the JBS Defendants' misrepresentations and continued to arrive for work each day, completely unaware that other workers at the plant were infected with COVID-19 and/or were displaying symptoms consistent with COVID-19.

167.    As a direct and proximate result of Enock Benjamin's reliance on the JBS Defendants' misrepresentations, Enock Benjamin became infected with COVID-19 while working at the JBS Souderton Plant, and died only days later.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and/or severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, delay damages pursuant to Pa.R.C.P. 238, interest, and allowable costs of suit, and brings this action to recover the same.

Case ID: 200500370

**COUNT III**
*Plaintiff, the Estate of Enock Benjamin v. The JBS Defendants*
<u>INTENTIONAL MISREPRESENTATION</u>

168.   Plaintiff hereby incorporates all preceding paragraphs of this Complaint here by reference.

169.   The JBS Defendants owed lawful business invitees at the JBS Souderton Plant, including Enock Benjamin, the highest duty of care.

170.   At all relevant times, the JBS Defendants represented to business invitees, including Enock Benjamin, that it was safe for workers to arrive for their shifts at the JBS Souderton Plant.

171.   At all relevant times, the JBS Defendants' representations were material to Enock Benjamin's presence at the JBS Souderton Plant.

172.   The JBS Defendants' representation that it was safe for workers to arrive for their shifts at the JBS Souderton Plant was false.

173.   This misrepresentation was made intentionally and knowingly.

174.   The JBS Defendants learned they had misrepresented the risk of COVID-19 infections to workers at the JBS Souderton Plant, learned that workers at the Plant, including Enock Benjamin, relied upon the JBS Defendants' misrepresentations, and the JBS Defendants failed to correct their misrepresentations.

175.   At all relevant times, the JBS Defendants had actual knowledge of the risk of COVID-19 infections to workers at the JBS Souderton Plant, including Enock Benjamin.

176.   At all relevant times, the JBS Defendants had actual knowledge that workers at the JBS Souderton Plant were infected with COVID-19 and/or were experiencing symptoms consistent with COVID-19.

27

Case ID: 200500370

177.    Despite their actual knowledge of COVID-19 infections at the JBS Souderton Plant, and the risk these infections posed to other workers, including Enock Benjamin, the JBS Defendants kept the JBS Souderton Plant open to workers up to and through at least March 27, 2020.

178.    The JBS Defendants' motivation for intentionally misrepresenting the safety of the JBS Souderton Plant was to make money and to continue to profit.

179.    The JBS Defendants intentionally misrepresented and deceived workers into believing that the JBS Souderton Plant was safe to ensure that workers continued to show up each day for their shifts and to ensure that the JBS Defendants continued to profit.

180.    Workers at the JBS Souderton Plant, including Enock Benjamin, justifiably relied upon the JBS Defendants' false representation that the JBS Souderton Plant was safe at all relevant times.

181.    The conduct of the JBS Defendants, as described above, demonstrated a reckless disregard for the safety and health of workers at the JBS Souderton Plant.

182.    The death and injuries sustained by Plaintiff's decedent was caused by the negligence, gross negligence, carelessness, recklessness, outrageous conduct and intentional misrepresentations of the JBS Defendants, acting by and through their agents, servants, workers and/or employees, both generally and in the following respects:

    a.  Failing to close the JBS Souderton Plant despite the known dangers caused by COVID-19 infections at the plant;

    b.  Failing to close the JBS Souderton Plant despite the known dangers caused by workers displaying symptoms of COVID-19 infections at the plant;

Case ID: 200500370

c.  Failing to warn workers at the JBS Souderton Plant of the dangers posed by COVID-19 infections at the plant;

d.  Failing to warn workers at the JBS Souderton Plant of the dangers posed by workers displaying symptoms of COVID-19 infections at the plant;

e.  Exposing workers at the JBS Souderton Plant to unacceptable risks of harm;

f.  Violating applicable OSHA regulations, including the General Duty Cause;

g.  Failing to provide special precautions which would have protected workers from the particular and unreasonable risks of harm which the JBS Defendants recognized;

h.  Failing to train and supervise workers at the JBS Souderton Plant properly;

i.  Failing to adequately warn workers at the JBS Souderton Plant of the peculiar and/or unsafe conditions and/or special dangers existing at the JBS Souderton Plant;

j.  Violating and failing to comply with Federal and State statutes, local ordinances, and all other rules or regulations applicable or in effect, and specifically OSHA and CDC guidance regarding COVID-19 protection and prevention for workplaces and workers;

k.  Failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans; and

l.  Failing to cease and/or postpone operations until proper and necessary precautions could be taken to safeguard workers at the JBS Souderton Plant.

183.   The JBS Defendants' conduct, as described above, demonstrated a wanton disregard for the safety and health of workers at the JBS Souderton Plant.

29

184.    By reason of the intentional misrepresentations of the JBS Defendants, as set forth above, Plaintiff's decedent suffered an agonizing and horrific death.

185.    By conducting itself as set forth above, the JBS Defendants' intentional misrepresentations were a substantial factor, a factual cause of and/or increased the risk of harm to Plaintiff's decedent.

186.    The JBS Defendants' intentional misrepresentations qualify as an exception to the Fair Share Act, 42 Pa.C.S. § 7102, and therefore all JBS Defendants are jointly and severally liable for the death of Enock Benjamin and all injuries related to his death.

**WHEREFORE**, Plaintiff demands that judgment be entered in favor of the wrongful death beneficiaries and against Defendants, jointly and severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, interest, and allowable costs of suit and brings this action to recover the same.

**COUNT IV**
***Plaintiff, the Estate of Enock Benjamin v. The JBS Defendants***
**WRONGFUL DEATH**

187.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference.

188.    Enock Benjamin is survived by his son, Ferdinand Benjamin, his wife, Mireille Benjamin, and his daughter, Debbie Benjamin.

189.    By reason of the death of Enock Benjamin, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling, and loss of guidance.

Case ID: 200500370

190.    As a direct and proximate result of the foregoing, decedent, Enock Benjamin's wrongful death beneficiaries incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and medicine rendered to decedent until the time of his death and to incur various funeral, burial, and estate and administration expenses for which Plaintiff is entitled to compensation.

191.    Plaintiff, individually and as Administratrix Ad Prosequendum of the Estate of Enock Benjamin, brings this action by virtue of the Wrongful Death Act, 42 Pa.C.S.A. § 8301, and Pa.R.C.P. 2202, and claims all benefits and recoverable damages under the Wrongful Death Act on behalf of all other persons entitled to recover under law, namely Mireille Benjamin and Debbie Benjamin.

192.    Plaintiff brings this action by virtue of, *inter alia*, 42 Pa.C.S. § 8301 and claim all damages encompassed thereby, including any and all damages members of the Estate are entitled to under Rettger v. UPMC Shadyside, 991 A.2d 915 (Pa. Super. 2010).

**WHEREFORE**, Plaintiff demands that judgment be entered in favor of the wrongful death beneficiaries and against Defendants, jointly and severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, interest, and allowable costs of suit and brings this action to recover the same.

**COUNT V**
***Plaintiff, the Estate of Enock Benjamin v. The JBS Defendants***
**SURVIVAL ACT**

193.    Plaintiff incorporates all preceding paragraphs of this Complaint here by reference.

194.    Plaintiff claims on behalf of the Estate of Enock Benjamin all damages suffered by the Estate by reason of the death of Enock Benjamin, including, without limiting the

31

Case ID: 200500370

generality of the following: the severe injuries and symptoms suffered by Enock Benjamin, which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Enock Benjamin suffered prior to his death; the loss of future earning capacity suffered by Enock Benjamin from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries he sustained by reason of the Defendants' conduct.

195.    Plaintiff brings this action on behalf of the Estate of Enock Benjamin, by virtue of the Survival Act, 42 Pa.C.S.A. § 8302, and claims all benefits of the Survival Act on behalf of Enock Benjamin's Estate, and other persons entitled to recover under law.

**WHEREFORE**, Plaintiff demands that judgment be entered in favor of the wrongful death beneficiaries and against Defendants, jointly and severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, interest, and allowable costs of suit and brings this action to recover the same.

**SALTZ MONGELUZZI & BENDESKY P.C.**

By:    */s/ Robert J. Mongeluzzi*
ROBERT J. MONGELUZZI
STEVEN G. WIGRIZER
JEFFREY P. GOODMAN
JASON S. WEISS

*Attorneys for Plaintiff, Ferdinand Benjamin, Personal Representative of the Estate of Enock Benjamin*

32

Case ID: 200500370



*Filed and Attested by the
Office of Judicial Records
07 MAY 2020 08:34 am
A. SILIGRINI*

## <u>VERIFICATION</u>

The averments or denials of fact in the foregoing document are true based upon the signer's personal knowledge of information and belief. If the foregoing contains averments which are inconsistent in fact, signer has been unable, after reasonable investigation, to ascertain which of the inconsistent averments are true, but signer has knowledge or information sufficient to form a belief that one of them is true. This verification is made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

DATE: May 6, 2020
_____

DocuSigned by:

2284101E0CF34AB...

FERDINAND BENJAMIN

Case ID: 200500370

**SALTZ MONGELUZZI & BENDESKY P.C.**
BY:    ROBERT J. MONGELUZZI/STEVEN G. WIGRIZER
       JEFFREY P. GOODMAN/JASON S. WEISS
Identification No.: 36283/30396/309433/310446
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282



ATTORNEY FOR PLAINTIFF

*Filed and Attested by the
Office of Judicial Records
28 MAY 2020 11:51 am
E. MEENAN*

| | |
|---|---|
| **FERDINAND BENJAMIN, Individually and as the Personal Representative of the Estate of ENOCK BENJAMIN, Deceased**<br><br>*Plaintiff*<br><br>v.<br><br>**JBS S.A., JBS USA FOOD COMPANY, JBS USA HOLDINGS, INC., JBS SOUDERTON, INC.** *And* **PILGRIM'S PRIDE CORPORATION**<br><br>*Defendants* | **PHILADELPHIA COUNTY COURT OF COMMON PLEAS LAW DIVISION**<br><br><br>**MAY TERM, 2020**<br><br>**NO.: 0370** |

## AFFIDAVIT OF SERVICE

I, Jeffrey P. Goodman, Esquire, hereby certify that service of the Complaint was made on defendant, JBS USA Food Company, by certified mail on May 14, 2020, at 1770 Promontory Circle, Greeley, CO 80634.

A true and correct copy of the return receipt is attached hereto and marked as Exhibit "A."

                               **SALTZ MONGELUZZI & BENDESKY P.C.**

By:    */s/ Jeffrey P. Gpoodman*
              ROBERT J. MONGELUZZI
              STEVEN G. WIGRIZER
              JEFFREY P. GOODMAN
              JASON S. WEISS

*Attorneys for Plaintiff, Ferdinand Benjamin,*
*Personal Representative of the Estate of*
*Enock Benjamin*

Dated: May 19, 2020

Case ID: 200500370



*Filed and Attested by the Office of Judicial Records 19 MAY 2020 11:51 am E. MEENAN*

# USPS Tracking®

Tracking | FAQs

**Track Another Package** +

Track Packages Anytime, Anywhere    Get the free Informed Delivery® feature to receive automated notifications on your packages    **Learn More**

Tracking Number: 70111150000164991714    Remove

**Status**

Your item was delivered to the front desk, reception area, or mail room at 1:06 pm on May 14, 2020 in GREELEY, CO 80634.

✓ **Delivered**

May 14, 2020 at 1:06 pm
Delivered, Front Desk/Reception/Mail Room
GREELEY, CO 80634

Get Updates ⌄

Delivered



**SALTZ MONGELUZZI & BENDESKY P.C.**
BY:    ROBERT J. MONGELUZZI/STEVEN G. WIGRIZER
   JEFFREY P. GOODMAN/JASON S. WEISS
Identification No.: 36283/30396/309433/310446
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282



Filed and Attested by the
Office of Judicial Records
ATTORNEYS FOR PLAINTIFF
E. MEENAN

| | |
|---|---|
| **FERDINAND BENJAMIN, Individually and as the Personal Representative of the Estate of ENOCK BENJAMIN, Deceased** | **PHILADELPHIA COUNTY COURT OF COMMON PLEAS LAW DIVISION** |
| *Plaintiff* | |
| v. | **MAY TERM, 2020** |
| **JBS S.A., JBS USA FOOD COMPANY, JBS USA HOLDINGS, INC., JBS SOUDERTON, INC.** *And* **PILGRIM'S PRIDE CORPORATION** | **NO.: 0370** |
| *Defendants* | |

## AFFIDAVIT OF SERVICE

   I, Jeffrey P. Goodman, Esquire, hereby certify that service of the Complaint was made on defendant, JBS USA Holdings, Inc., by certified mail on May 14, 2020, at 1770 Promontory Circle, Greeley, CO 80634.

   A true and correct copy of the return receipt is attached hereto and marked as Exhibit "A."

          **SALTZ MONGELUZZI & BENDESKY P.C.**

     By:  */s/ Jeffrey P. Gpoodman*
         ROBERT J. MONGELUZZI
         STEVEN G. WIGRIZER
         JEFFREY P. GOODMAN
         JASON S. WEISS

*Attorneys for Plaintiff, Ferdinand Benjamin,*
*Personal Representative of the Estate of*
*Enock Benjamin*

Dated: May 19, 2020



*Filed and Attested by the
Office of Judicial Records
19 MAY 2020 12:06 pm
E. MEENAN*

## USPS Tracking®

### Track Another Package +

**Tracking Number:**

70151520000162538820

Remove

Your item was delivered to the front desk, reception area, or mail room at 1:06 pm on May 14, 2020 in GREELEY, CO 80634.

### ✅ Delivered

May 14, 2020 at 1:06 pm
Delivered, Front Desk/Reception/Mail Room
GREELEY, CO 80634

**Get Updates** ∨

