## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FERDINAND BENJAMIN, Individually and as the Personal Representative of the Estate of ENOCK BENJAMIN, Deceased** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 2:20-cv-02594-JP** |
| **JBS S.A.,** *et al.***,** | |
| **Defendants.** | |

### [PROPOSED] ORDER

**AND NOW**, this _____ day of _____, 2020, upon consideration of Plaintiff's Motion to Remand, and Defendants JBS USA Food Company's, JBS USA Holdings, Inc.'s, JBS Souderton, Inc.'s, and Pilgrim's Pride Corporation's Opposition to Plaintiff's Motion to Remand, it is hereby **ORDERED** that Plaintiff's Motion is **DENIED**.

**BY THE COURT:**

_____
**John R. Padova**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FERDINAND BENJAMIN, Individually and as the Personal Representative of the Estate of ENOCK BENJAMIN, Deceased**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JBS S.A., *et al.*,**<br><br>**Defendants.** | **Civil Action No. 2:20-cv-02594-JP** |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND OF DEFENDANTS JBS USA FOOD COMPANY, JBS USA HOLDINGS, INC., JBS SOUDERTON, INC., AND PILGRIM'S PRIDE CORPORATION**

Dated: July 13, 2020

*/s/ Molly E. Flynn*

Molly E. Flynn (Pa. ID No. 205593)
Mark D. Taticchi (Pa. ID No. 323436)
Rebecca L. Trela (Pa. ID No. 313555)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone:    (215) 988-2700
Facsimile:    (215) 988-2757

*Attorneys for Defendants JBS USA Food Co., JBS USA Holdings, Inc., JBS Souderton, Inc., and Pilgrim's Pride Corp.*

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................... 1

II.    RELEVANT FACTUAL BACKGROUND ............................................................... 2

    A.    Plaintiff's Lawsuit ........................................................................................... 2

    B.    The Coronavirus Pandemic and Federal Response .......................................... 5

III.   ARGUMENT .............................................................................................................. 8

    A.    Plaintiff's Motion to Remand should be denied because JBS Souderton, Inc.'s citizenship should not be considered for purposes of determining whether complete diversity exists between the parties. ........................................ 8

        1.    Diversity jurisdiction exists because Plaintiff fraudulently joined JBS Souderton, Inc. as a defendant in this lawsuit. .................................. 9

            a.    The competent and probative evidence demonstrates that JBS Souderton, Inc. was Enock Benjamin's employer. .............. 10

            b.    No amount of gamesmanship can distort the unassailable fact that Enock Benjamin was employed by JBS Souderton, Inc. ........................................................................................... 12

            c.    Additional evidence confirms Enock Benjamin was employed by JBS Souderton, Inc. .................................................. 18

        2.    Plaintiff's fraudulent and intentional misrepresentation claims do not come within the *Martin* exception to the exclusive remedy provision of the PWCA, which grants immunity to JBS Souderton, Inc. ........................................................................................................ 20

            a.    As Plaintiff concedes, the *Martin* exception is limited to a narrow set of facts. .................................................................... 20

            b.    Plaintiff failed to plead a case within the *Martin* exception. ....... 22

    B.    Federal-Question Jurisdiction Exists Under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) .............................................................................................................. 23

IV.    CONCLUSION ........................................................................................................ 28

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Batoff v. State Farm Ins. Co.*,
  977 F.2d 848 (3d Cir. 1992)..................................................................................8

*Bernstein v. Balli Steel, PLC*,
  No. CA 08-62, 2008 WL 862470 (E.D. Pa. Mar. 31, 2008)........................................9

*In re Briscoe*,
  448 F.3d 201 (3d Cir. 2006)............................................................................9, 14

*Brown v. Jevic*,
  575 F.3d 322 (3d Cir. 2009)................................................................................8

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987)..........................................................................................25

*In re Diet Drugs*,
  220 F. Supp. 2d 414 (E.D. Pa. 2002) ....................................................................9

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
  545 U.S. 308 (2005)................................................................................ *passim*

*Gunn v. Minton*,
  568 U.S. 251 (2013)..........................................................................................24

*Hopkins v. Walker*,
  244 U.S. 486 (1917)..........................................................................................26

*Kostryckyj v. Pentron Lab. Tech., LLC*,
  52 A. 3d 333 (Pa. Super. 2012)..........................................................................21

*Martin v. Lancaster Battery Co.*,
  606 A.2d 444 (Pa. 1992) ..................................................................................21

*Mayes v. Rapoport*,
  198 F.3d 457 (4th Cir. 1999) ..............................................................................9

*Ranalli v. Rohm & Haas Co.*,
  983 A. 2d 732 (Pa. Super. 2009)........................................................................20

*Rural Cmty. Workers All. v. Smithfield Foods*,
  No. 5:20-cv-06063, 2020 WL 2145350 (W.D. Mo. May 5, 2020)...................................24, 25

*Santiago v. Penn. Nat'l Mut. Cas. Ins. Co.*,
  613 A.2d 1235 (Pa. Super. 1992)........................................................................20

*Scott v. Lance Aviation, Inc.*,
   No. 8:09-CV-986, 2010 WL 11507789 (M.D. Fla. Mar. 10, 2010) ........................................24

*Simmons v. Cmty. Educ. Ctrs., Inc.*,
   No. 15-929, 2015 WL 1788712 (E.D. Pa. Apr. 20, 2015) ......................................................21

*Stellar v. Allied Signal, Inc.*,
   98 F. Supp. 3d 790 (E.D. Pa. 2015) ..................................................................................25

*Uon v. Tanabe International Co., Inc.*,
   No. 10-5185, 2010 WL 4946681 (E.D. Pa. Dec. 3, 2010) ....................................................22

*Various Plaintiffs v. Various Defendants ("Oil Field Cases")*,
   673 F. Supp. 2d 358 (E.D. Pa. 2009) .................................................................................8

*Winterberg v. Trans. Ins., Co.*,
   72 F. 3d 318 (3d Cir. 1995).............................................................................20, 22, 23

## STATUTES, RULES & REGULATIONS

85 Fed. Reg. 26313 ..........................................................................................................7, 24

28 U.S.C. § 1332 ...............................................................................................................8

28 U.S.C. § 1441(b) .........................................................................................................8

## OTHER AUTHORITIES

OSHA, "Guidance on Preparing Workplaces for COVID-19,"
   OSHA 3990-03 2020 (Mar. 9, 2020),
   https://www.osha.gov/Publications/OSHA3990.pdf .........................................................6, 7

U.S. Dep't of Agriculture, USDA to Implement President Trump's Executive
   Order on Meat and Poultry Processors, Apr. 28, 2020,
   http://www.usda.gov/media/press-releases/2020/04/28/usda-implement-
   president-trumps-executive-order-meat-and-poultry .............................................................7

Defendants JBS USA Food Company, JBS USA Holdings, Inc., JBS Souderton, Inc., and Pilgrim's Pride Corporation (collectively, "Defendants") respectfully submit the following Memorandum of Law in Opposition to Plaintiff's Motion to Remand.  Defendants also respectfully request that the Court hold oral argument at which their counsel may be heard.

## I.      INTRODUCTION

This Court has both diversity jurisdiction and federal-question jurisdiction over this action.  *First*, the only non-diverse defendant, JBS Souderton, Inc., is an improper, fraudulently joined party who therefore does not destroy diversity for jurisdictional purposes.  As the Notice of Removal shows, JBS Souderton, Inc. was Decedent Enock Benjamin's employer; as such, all of Plaintiff's claims against that entity are subject to the exclusivity provisions of Pennsylvania's Workers' Compensation Act ("PWCA") and may not be heard in this Court.

To avoid that otherwise-inexorable conclusion, Plaintiff attempts to manufacture a factual dispute about who employed Mr. Benjamin, suggesting he was employed by JBS USA Holdings, Inc.—an entity that ceased to exist in 2015.  To resurrect that long-defunct corporation and cast it in the role of Mr. Benjamin's employer, Plaintiff does not rely on objective, verified sources like Mr. Benjamin's pay stubs, his tax return, the collective bargaining agreement between his union and his employer, or any other document generated by Enock Benjamin or his employer.  The reason is simple:  all of those documents clearly show that *JBS Souderton, Inc.*—not JBS USA Holdings, Inc.—was Mr. Benjamin's employer.  Rather, Plaintiffs present only unverified information submitted by strangers to the employer-employee relationship.  In short, all of the claims against JBS Souderton, Inc. belong in front of Pennsylvania's Department of Labor &

Industry Bureau of Workers' Compensation ("Bureau"), and this Court lacks jurisdiction to adjudicate those claims.[1]

*Second*, Plaintiff's Complaint raises federal-question jurisdiction.  Curiously, Plaintiff's Motion to Remand does not even attempt to engage with the basis of federal-question jurisdiction asserted in the Notice of Removal—namely, the existence of a substantial, disputed issue of federal law under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).  As explained below, Plaintiff's effort to invoke, and hold Defendants liable under, the federal government's coronavirus-related workplace-safety directives creates such an issue here.

For these reasons, set forth more fully below, the Court should deny Plaintiff's Motion to Remand.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Plaintiff's Lawsuit

Plaintiff's Complaint, originally filed in the Philadelphia County Court of Common Pleas, names five corporate defendants:  JBS S.A.; JBS USA Holdings, Inc.; JBS USA Food Company; JBS Souderton, Inc.; and Pilgrim's Pride Corporation.  The Complaint does not explicitly identify which of those entities acted as Mr. Benjamin's employer.  Nor, as a general rule, does it distinguish among them in any of its factual or legal allegations, instead simply referring to them collectively (and interchangeably) as "JBS" or the "JBS Defendants."  *E.g.*, Compl. ¶¶ 6-8, 12, 26-27, 40-46, ECF No. 1-1.

---

[1] For the reasons explained in Defendants' motion to dismiss (ECF No. 14), the Court also lacks personal jurisdiction over JBS USA Holdings, Inc. and Pilgrim's Pride Corporation and thus cannot rule on the merits of Plaintiff's claims against those defendants.  The only defendant over whom the Court has both personal jurisdiction and subject matter jurisdiction to be able to rule on the merits of Plaintiff's claims is JBS USA Food Company.

Notwithstanding the breadth of brush often used in the Complaint, Plaintiff does (correctly) single out JBS Souderton, Inc. as Mr. Benjamin's employer.  For example, Plaintiff alleges that "Mr. Benjamin was a union steward at the JBS meat processing plant in Souderton, PA," *id.* ¶ 3, and that he "was known as the 'go-to-man' for JBS Souderton employees and as a 'champion of the people' by his colleagues." *Id.* ¶ 4.  The Complaint also states that "*JBS Souderton* has approximately 1,400 employees and specializes in beef processing and packaging." *Id.* ¶ 49 (emphasis added).  The only allegations directly addressing JBS USA Holdings, Inc. relate to jurisdictional facts, such as its purported (1) place of incorporation, (2) principal place of business, (3) locations in which it conducts business, and (4) place in the corporate hierarchy. *Id.* ¶¶ 122-125, 134, 135, 137.

Reliable corporate documents confirm that JBS Souderton, Inc., not JBS USA Holdings, Inc., employed Mr. Benjamin.  For example, Mr. Benjamin received a federal tax form that identifies JBS Souderton, Inc. as his employer and that includes an EIN associated with JBS Souderton, Inc. *See* Ex. A, 2018 and 2019 W-2 forms.

| b Employer identification number (EIN) | 23-1284945 |
|---|---|
| c Employer's name, address, and ZIP code | |

JBS SOUDERTON, INC

1770 PROMONTORY CIRCLE
GREELEY, CO, CO 80634

| e Employee's first name and initial | Last name |
|---|---|
| 02500664 | 1 of 1 |

ENOCK  BENJAMIN

957 ANCHOR ST
PHILADELPHIA, PA 19124

Similarly, Mr. Benjamin received paystubs from JBS Souderton, Inc.  Ex. B, Paystub.



A residency certification form, signed by Mr. Benjamin, identifies JBS Souderton, Inc. as his employer.  Ex. C, Executed Residency Certification Form.

The collective bargaining agreement governing operations at the Souderton plant, *which Mr. Benjamin signed in his capacity as a union representative*, likewise identifies JBS Souderton, Inc., as the employer at the plant.  Ex. D, Executed Collective Bargaining Agreement ("CBA").



ARTICLE 1 - AGREEMENT

This Agreement has been made and entered into by JBS **SOUDERTON, Inc.** for its Souderton, Pennsylvania Beef Processing and MOPAC Rendering facilities (hereinafter the Company), and the United Food and Commercial Workers Union Local 1776 **Keystone State**, chartered by the United Food And Commercial Workers International Union CTW, CLC (hereinafter, the Union).

And Pennsylvania's Bureau of Workers' Compensation updated its claim file to identify JBS Souderton, Inc. as Mr. Benjamin's employer, correcting an earlier document in which the Bureau misidentified the employer as JBS USA Holdings, Inc.  Ex. E, July 2, 2020 Pa. Bureau of Workers' Comp., Notification of Party Replaced from Claim.

**pennsylvania**
DEPARTMENT OF LABOR & INDUSTRY
BUREAU OF WORKERS' COMPENSATION

**Party Replaced from Claim**

07/02/2020

Claimant's Name:  Benjamin, Enock
WCID:  100674958
WCAIS Claim Number:  8503315
Date of Injury:  04/03/2020

Dear Sir/Madam:

You are receiving this correspondence as notification that the party you represent on this claim has been updated with another party.

Old Party Name: JBS USA Holdings, Inc.
New Party Name: JBS SOUDERTON INC

**B.      The Coronavirus Pandemic and Federal Response**

As Plaintiff alleges, the first case of community-acquired COVID-19 in the United States was reported on January 30, 2020.  Compl. ¶ 20.  By the time Mr. Benjamin passed away, nine weeks later, the United States had recorded more than 240,000 confirmed COVID-19 infections

5

and nearly 5,800 confirmed deaths.  Compl. ¶ 26.  As the situation evolved and intensified, so too did the federal government's response.  In February 2020, the CDC issued "Interim Guidance for Businesses and Employers to Plan and Respond to Coronavirus Disease 2019 (COVID-19)."[2] Ex. F, CDC Interim Guidance for Businesses and Employers to Plan and Respond to Coronavirus Disease 2019 (COVID-19), February 2020.  Notably absent from the guidance was any reference to personal protective equipment ("PPE").  *Id.*  It also urged employers to "be sure to maintain confidentiality of people with confirmed COVID-19."  *Id.*

Then, on March 9, 2020, OSHA issued its "Guidance on Preparing Workplaces for COVID-19."  The OSHA guidance established four job classifications, depending on the anticipated risk of infection from COVID-19:



*See* OSHA, "Guidance on Preparing Workplaces for COVID-19," OSHA 3990-03 2020 (Mar. 9, 2020), https://www.osha.gov/Publications/OSHA3990.pdf.  OSHA reserved the "very high" and "high" classifications for vocations that involved direct contact with persons known or suspected to be infected with COVID-19, such as healthcare, laboratory, and mortuary workers.  OSHA

---

[2] Plaintiff alleges that CDC issued its guidance on March 9, 2020; however, Defendants believe Plaintiff's reference is actually to this guidance from late February 2020.

advised that workers in these classifications "likely need to wear gloves, a gown, a face shield or goggles, and either a face mask or a respirator, depending on their job tasks and exposure risks." *Id.* at 25.  For medium-risk workers—who work in close contact with one another, or have regular contact with the public—the OSHA guidance stated that they "*may* need to wear some combination of gloves, a gown, a face mask, and/or a face shield or goggles," but recognized that the "PPE ensembles for workers in the medium exposure risk category will vary by work task, the results of the employer's hazard assessment, and the types of exposures workers have on the job." *Id.* at 22 (emphasis added).  The OSHA guidance also acknowledged that PPE had limited efficacy and "should not take the place of other prevention strategies." *Id.* at 14.

On April 3, 2020 (which, coincidentally, was also the date of Mr. Benjamin's death), the CDC first recommended that the general public wear cloth face coverings to reduce the risk of transmitting COVID-19.  *See* Ex. G, CDC, "Recommendations for Cloth Face Covers," (dated Apr. 3, 2020) ("CDC Mask Recommendation").

Then, on April 28, 2020, the President issued an Executive Order which directed that "the Secretary of Agriculture shall take all appropriate action under [the Defense Production Act] to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA." *See* Food Supply Chain Order, 85 Fed. Reg. 26313, 26313 (Apr. 28, 2020).  Likewise, the Secretary of Agriculture declared, on the same day the Food Supply Chain Order was issued, that "USDA will work with meat processing [companies] to affirm they will operate in accordance with the CDC and OSHA guidance, and then work with state and local officials to ensure that these plants are allowed to operate."  U.S. Dep't of Agriculture, USDA to Implement President Trump's Executive Order on Meat and

7

Poultry Processors, Apr. 28, 2020, *available at* http://www.usda.gov/media/press-releases/2020/04/28/usda-implement-president-trumps-executive-order-meat-and-poultry.

## III.    ARGUMENT

**A.    Plaintiff's Motion to Remand should be denied because JBS Souderton, Inc.'s citizenship should not be considered for purposes of determining whether complete diversity exists between the parties.**

Plaintiff attacks JBS USA Food Company's removal of this dispute to this Court based on diversity jurisdiction under 28 U.S.C. § 1332 claiming that (1) Plaintiff and JBS Souderton, Inc. are both residents of Pennsylvania, (2) JBS Souderton, Inc. was not fraudulently joined, and (3) *Martin* provides an exception to the exclusivity provision of the PWCA.  But as demonstrated below, the Court should reject each of Plaintiff's arguments.

Pursuant to 28 U.S.C. § 1441(b), an action "may not be removed if any of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." (emphasis added).  A defendant is "fraudulently joined" where "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009).  Because there is no reasonable basis in fact or colorable ground supporting Plaintiff's claims against JBS Souderton, Inc.—and there is no good faith basis for Plaintiff to believe his claims will survive if this action is remanded to the Philadelphia Court of Common Pleas—JBS Souderton, Inc. has been fraudulently joined in this action, and Defendants' removal is proper.

The Third Circuit has specifically recognized that under *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992), a court "may engage in a limited piercing of the pleadings to discover any fraudulent joinder."  *Various Plaintiffs v. Various Defendants ("Oil Field Cases")*, 673 F. Supp. 2d 358, 366 (E.D. Pa. 2009).  This Court is not precluded from considering reliable

evidence that a defendant proffers to support removal. *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006). Moreover, courts in this district previously determined that when evaluating whether there has been a fraudulent joinder to defeat removal, courts must not "blindly accept whatever plaintiffs may say no matter how incredible or how contrary to the overwhelming weight of the evidence." *In re Diet Drugs*, 220 F. Supp. 2d 414, 419-20 (E.D. Pa. 2002). Said another way, courts should not remand a case simply because a plaintiff alleges facts are in dispute when there is no genuine dispute. *Id.* ("We are not to decide automatically in favor of remand simply because some facts may be said to be in dispute."); *see also Bernstein v. Balli Steel, PLC*, No. CA 08-62, 2008 WL 862470, at * 3 (E.D. Pa. Mar. 31, 2008) (acknowledging that a district court must determine the facts from the evidence and not rely on mere allegations when the plaintiff contests a defendant's assertion that joinder of another defendant was a sham to defeat removal.)

If, after conducting the relevant analysis, the Court determines that the joinder was fraudulent, "the court can 'disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *In re Briscoe*, 448 F.3d at 216 (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).

### 1.   Diversity jurisdiction exists because Plaintiff fraudulently joined JBS Souderton, Inc. as a defendant in this lawsuit.

Plaintiff attempts to manufacture a factual dispute where none exists to induce remand to state court. Contrary to Plaintiff's assertion, and as demonstrated below, there is no fact issue, let alone a genuine dispute of material fact, that Enock Benjamin's employer was, at all relevant times, JBS Souderton, Inc. This undeniable fact is established based on the record before the Court.

      a.      **The competent and probative evidence demonstrates that JBS Souderton, Inc. was Enock Benjamin's employer.**

Affixed to its Notice of Removal, JBS Souderton, Inc. presented sworn testimony from two witnesses establishing that Enock Benjamin's employer was JBS Souderton, Inc., which is a workers' compensation subscriber in the Commonwealth of Pennsylvania. NOR Exs. B-C, ECF Nos. 1-2 & 1-3. For instance, JBS Souderton, Inc.'s Human Resource Manager, Amanda Keller, expressly and unequivocally testifies that "[p]rior to his death, Enock Benjamin had been an *employee with JBS Souderton, Inc.* since November 12, 2007." NOR Ex. B, Keller Dec. ¶ 7, ECF No. 1-2 at 3 (emphasis added). Ms. Keller also explains that "[a]t the time of Enock Benjamin's death, he was *employed as a JBS Souderton, Inc.* 'Walking Steward' and earned $22.00 per hour for his services. For 2020, Enock Benjamin was scheduled to make a gross total amount of $45,760.00 *as an employee of JBS Souderton, Inc.*" *Id.* ¶ 8 (emphasis added). Ms. Keller also proves-up and attaches to her declaration the "W-2s *issued by JBS Souderton, Inc.* to Enock Benjamin for the tax years of 2019 and 2018." *Id.* ¶ 9 and Attachment 1 thereto (emphasis added). The W-2s unmistakably show that Enock Benjamin's employer was JBS Souderton, Inc.:

| b Employer identification number (EIN) | | 12a See instructions for box 12 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|
| c Employer's name, address, and ZIP code | | D  \|$  10409.55 | 37288.88 | 2697.48 |
| JBS SOUDERTON, INC | | 12b | 3 Social security wages | 4 Social security tax withheld |
| | | DD  \|$  10137.46 | 47698.43 | 2957.30 |
| | | 12c | 5 Medicare wages and tips | 6 Medicare tax withheld |
| 1770 PROMONTORY CIRCLE | | \|$ | 47698.43 | 691.63 |
| GREELEY, CO, CO 80634 | | 12d | 7 Social security tips | 8 Allocated tips |
| e Employee's first name and initial   Last name   Suff. | | 12e | | |
| 02500664   1 of 1 | | \|$ | 9 Verification code | 10 Dependent care benefits |
| ENOCK  BENJAMIN | | This information is being furnished to the Internal Revenue Service. | 11 Nonqualified plans | 13 Statutory employee / Retirement plan / Third-party sick pay |
| 957 ANCHOR ST | | Copy B To Be Filed With Employee's FEDERAL Tax Return | | ☐   X   ☐ |
| PHILADELPHIA, PA 19124 | | | 14 Other | |
| | | | U DUES | 547.92 |
| | Import Code: NFKEP6EZ | a Employee's social security number | | |
| f Employee's address and ZIP code | | | | |
| 15 State   Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
| PA | 47698.43 | 1464.32 | 47698.43 | 1849.18 | PHILADELPHIA |



NOR Ex. B Attachment 1, ECF No. 1-2 at 6 and 8.

In his Motion to Remand, Plaintiff neither acknowledges nor attempts to address this competent and probative evidence demonstrating that Enock Benjamin's employer was JBS Souderton, Inc.  *See generally* Motion to Remand ("MTR"), ECF No. 17.  Plaintiff's omission, however, is not surprising because Plaintiff knows his father worked for JBS Souderton, Inc. Indeed, Plaintiff alleges that:  (1) "[a]t the time of his death, Mr. Benjamin was a union steward at the JBS meat processing plant in Souderton, P.A."; (2) "Enock Benjamin was known as the 'go-to-man' for JBS Souderton employees and as a 'champion of the people' by his colleagues"; and (3) "at the Souderton facility where Mr. Benjamin worked, . . .."  Compl. ¶¶ 3, 4, and 9.[3]  If Enock Benjamin's employer was actually JBS USA Holdings, Inc. as Plaintiff suggests for the first time in his Motion to Remand, why did he fail to plead those facts in his Complaint?  The answer is simple:  such an allegation would be knowingly false.

---

[3] Even these allegations show Plaintiff knows Enock Benjamin was employed by JBS Souderton, Inc.  For example, Plaintiff says "Enock Benjamin was known as the 'go-to-man' for *JBS Souderton employees*."  Compl. ¶ 4 (emphasis added).  And Plaintiff defines "JBS Souderton" in the Complaint as Defendant "JBS Souderton, Inc."  *Id.* ¶ 126.

> **b.      No amount of gamesmanship can distort the unassailable fact that Enock Benjamin was employed by JBS Souderton, Inc.**

Because Plaintiff cannot counter with competent, compelling evidence the sworn testimony of JBS Souderton, Inc.'s Human Resources Manager Amanda Keller and contemporaneous tax documents demonstrating that Enock Benjamin's employer was JBS Souderton, Inc., Plaintiff manufactures a false narrative by relying on materials issued by strangers to that employee-employer relationship for the proposition that JBS USA Holdings, Inc. is actually Enock Benjamin's employer.  *See* MTR at pp. 1-3, 9, 13-20.  The Court, however, should disregard Plaintiff's argument for several reasons.

First, the "Notice of Workers' Compensation Denial" ("Notice") relating to Enock Benjamin that Plaintiff attaches to his Motion to Remand as Exhibit A (ECF No. 17-1 at 3-4) and repeatedly embedded in his brief (*see* MTR at 2, 9, & 15) shows on its face that the Notice was *not prepared by JBS Souderton, Inc.* as Plaintiff falsely claims.  *See, e.g.*, MTR at 1, 9.  Rather, the Notice was prepared by and printed on the letterhead of the Bureau:



In any event, the Bureau's error was swiftly corrected—as Plaintiff concedes twice in his Motion to Remand.  MTR at 2 n.1, 17 n.6.  As Plaintiff must acknowledge, the Notice was corrected by amendment and the amended "Notice of Workers' Compensation Denial" clearly shows that JBS Souderton, Inc. was Mr. Benjamin's employer:



Ex. H, Declaration of Jonathan C. Meyers, Esq. ("Meyers Dec.") ¶ 8 and Attachment 3.

Furthermore, to the extent Plaintiff still tries to raise doubt based on the Bureau's erroneously issued Notice by inquiring as to the absence of an explanation for the erroneous Notice and "why JBS USA Holdings, Inc. was listed as the employer on the initial denial letter," JBS Souderton, Inc. answers these questions in the Declaration of Jonathan C. Meyers, Esq.[4]  *See*

---

[4]  As discussed *supra* in Sec. III(A), to identify indicia of fraudulent joinder, the Court may

Ex. H.  Attorney Meyers's sworn testimony explains that the erroneous information concerning

Enock Benjamin's employer was provided *by the Bureau* when the Notice was submitted by a

third-party administrator of workers' compensation claims and that the administrator did *not*

identify "JBS USA Holdings, Inc." as Enock Benjamin's employer.  Ex. H, Meyers Dec. ¶ 6.

Rather, the Bureau inserted the erroneous information.  *Id.*  Additionally, attorney Meyers

explains that when the Bureau's mistake was identified, steps were taken to correct the Bureau's

error immediately.  *Id.* ¶ 7-8 and Attachments 1-3.

Attorney Meyers's sworn testimony also explains that on July 2, 2020, the Bureau issued

a written update stating that Enock Benjamin's employer was "JBS Souderton, Inc."  *Id.* ¶ 10.

The Bureau's written update is attached to attorney Meyers's declaration and reflects the

following information:



**Party Replaced from Claim**

07/02/2020

Claimant's Name:  Benjamin, Enock
WCID:  100674958
WCAIS Claim Number:  8503315
Date of Injury:  04/03/2020

Dear Sir/Madam:

You are receiving this correspondence as notification that the party you represent on this claim
has been updated with another party.

Old Party Name: JBS USA Holdings, Inc.
New Party Name: JBS SOUDERTON INC

There is no action required if you are representing the new party on this claim, however, if you
are not authorized to represent the new party, please submit a Withdrawal of Appearance on
this claim.

Please contact the department if you have any questions on this claim.

Thank you,

Bureau of Workers' Compensation

---

pierce the pleadings and consider reliable evidence that the defendant may proffer to support the
removal.  *In re Briscoe*, 448 F.3d at 219-20.  Accordingly, the information affixed to JBS USA
Food Company's Notice of Removal and to this Response are appropriately before the Court.

*Id.* and Attachment 4 thereto.  Accordingly, attorney Meyers's testimony dispels any fog Plaintiff tried to manufacture in his Motion to Remand.

Plaintiff's reliance on materials from other workers' compensation claims is similarly misplaced.  *See* MTR at 16-17, ECF No. 17, and MTR Exs. C-D, ECF No. 17-1 at 13-14, 16-17. Like the Notice relating to Mr. Benjamin, these documents were also issued by the Bureau, not Defendants:

MTR Ex. D, ECF No. 17-1 at 16.

Consequently, the Bureau-generated denials from other workers' compensation claims does not create any doubt, let alone a genuine dispute of material fact, as to Enock Benjamin's employer.

In sum, neither Plaintiff's heated rhetoric nor the irrelevant, third-party documents cited in his Motion to Remand do anything to disturb the conclusive evidence offered by Enock Benjamin's paystub, W-2 forms, and the Residency Certification Form he signed under oath: JBS Souderton, Inc. was his employer. Accordingly, Plaintiff's discussion of whether a parent

company is entitled to PWCA immunity is factually inapposite and uninstructive for the issue

before the Court.  *See* MTR at 18-20.[5]

<blockquote>

**c.     Additional evidence confirms Enock Benjamin was employed by JBS Souderton, Inc.**

</blockquote>

Out of an abundance of caution, and considering Plaintiff's efforts to manufacture

confusion, JBS Souderton, Inc. affixes additional information to this Response further proving

the inescapable fact that Enock Benjamin's employer was JBS Souderton, Inc.  In addition to the

declaration of JBS Souderton, Inc.'s workers' compensation attorney, Jonathan C. Meyers,

discussed above,[6] JBS Souderton, Inc. presents the sworn testimony of Mathew Lovell as Exhibit

I.  Mr. Lovell is JBS Souderton, Inc.'s lead labor negotiator with the union at the Souderton

plant.  Ex. I, Declaration of Matthew Lovell ("Lovell Dec.") ¶ 2-3.  Mr. Lovell's testimony is

important for multiple reasons.

First, in both the Complaint and the Motion to Remand, Plaintiff highlights Enock

Benjamin's position "as a union steward at the JBS beef production plant in Souderton, PA."

Compl. ¶ 3 and MTR at 4.  Mr. Lovell's testimony establishes that the parties to the Souderton

plant's CBA are the United Food and Commercial Workers Union Local 1776 Keystone State

("Union" or "UFCW") *and JBS Souderton, Inc.*  Ex. I, Lovell Dec. ¶¶ 3-4 and Attachment 1

---

[5] Plaintiff also relies on a website-generated identification of Mr. Benjamin's employer, using the employer identification number (EIN) listed in the Notice of Compensation Denial.  Pl.'s Mem. 15–16, 16 n. 5 (citing Ex. I), ECF No. 17.  At best, this unauthenticated information shows only that JBS USA Holdings Lux S.á.r.l is or was a corporate entity, and this information further supports Defendants' statements about corporate conversion.  *See* Defs.' Notice of Removal, Ex. D, ECF No. 1-4.  The website print-out does not contain any information about the entity JBS USA Holding, Inc., and therefore does not support Plaintiff's claim that Mr. Benjamin was employed by JBS USA Holdings, Inc.

[6] As explained in the previous section of this brief, Meyers's declaration explains the reasons for the initial erroneous Notice issued by the Bureau and the subsequent correction of the Bureau's mistake.

thereto (excerpted).  Second, Mr. Lovell explains that Enock Benjamin, as the union steward, *participated in the CBA's negotiations with JBS Souderton, Inc.* and *signed the CBA* as a representative of the Union.  *Id.* ¶ 5 and Attachment 1 at p. 29.  Third, Mr. Lovell discusses that before the CBA was executed by the parties, Enock Benjamin *participated in negotiations and signed a Tentative Agreement* that, among other things, clarified JBS Souderton, Inc. was the employer of the union's members who work at the Souderton plant.  *Id.* ¶¶ 6-11 and Attachment 2 (excerpted).  Fourth, by signing the Tentative Agreement and the CBA, Enock Benjamin knew as early as March 14, 2019 that he, as well as the others working at the Souderton plant, were employed by JBS Souderton, Inc.  *Id.*

Additionally, JBS Souderton, Inc. presents a second declaration from Amanda Keller, which is attached as Exhibit J.  Ms. Keller presents evidence of a payroll stub for Enock Benjamin reflecting that his employer is JBS Souderton, Inc. and that he paid membership dues to the Union—"UFCW Local 1776."  Ex. J, Declaration of Amanda Keller ¶ 9 and Attachment 1 thereto.

Further, Enock Benjamin's Residency Certification Form is presented to demonstrate he signed documentation for state tax collection purposes declaring under penalty of perjury that his employer was JBS Souderton, Inc.  *See* Ex. C.

Collectively, all the probative and competent evidence before the Court demonstrates that Enock Benjamin was employed by JBS Souderton, Inc. and that JBS Souderton, Inc. was a subscriber to workers' compensation in the Commonwealth of Pennsylvania at the relevant time. NOR Ex. C, Rockwell Dec., ECF 1-3, ¶¶ 2-4 and Attachment 1 thereto, Certificate of Liability Insurance.  Those facts, coupled with controlling legal authority explaining that the PWCA's exclusivity provision bars Plaintiff's claims against JBS Souderton, Inc., establishes that Plaintiff

fraudulently joined JBS Souderton, Inc. as a defendant in this case.  Accordingly, Plaintiffs'

Motion to Remand should be denied.

> **2.** **Plaintiff's fraudulent and intentional misrepresentation claims do not come within the *Martin* exception to the exclusive remedy provision of the PWCA, which grants immunity to JBS Souderton, Inc.**

Plaintiff's argument that his misrepresentation claims against JBS Souderton, Inc. fall

within the narrow exception to the PWCA's exclusivity provision are legally and factually

untenable for at least two reasons:  (1) the *Martin* exception to PWCA immunity is limited to a

narrow set of facts; and (2) Plaintiff has failed to plead facts in his Complaint necessary to come

within that exception

> **a.** **As Plaintiff concedes, the *Martin* exception is limited to a narrow set of facts.**

As the Third Circuit has explained, the exception to PWCA immunity created in *Martin*

applies only in a narrow set of circumstances—namely, where an employer's actions

(1) aggravated an employee's *pre-existing* injury (2) through fraudulent misrepresentation of

facts *pertaining to that injury.  See Winterberg v. Trans. Ins., Co.*, 72 F. 3d 318, 323 (3d Cir.

1995); *Ranalli v. Rohm & Haas Co.*, 983 A. 2d 732, 735 (Pa. Super. 2009) ("[g]enerally, even

claims of fraud by the employer are barred by the exclusivity provision of the [PWCA…] [t]he

only exception [*Martin*] is where the employer knew its employee had a disease and withheld

that information, [thus] causing an aggravation of the disease"); *Santiago v. Penn. Nat'l Mut.

Cas. Ins. Co*., 613 A.2d 1235, 1241 (Pa. Super. 1992) ("We are reluctant [] to extend [the

*Martin*] exception" beyond a situation where an employer has "concealed, altered, or

intentionally misrepresented information related to [an employee's] work-related injury which

resulted in aggravation of the injury").

The facts of *Martin* illustrate both the rationale for, and the narrowness of, the exception. In *Martin*, the plaintiff-employee worked in a facility that used a manufacturing process which exposed workers to lead dust and fumes. *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 444–45 (Pa. 1992). The defendant-employer performed blood tests on employees but intentionally withheld the results of the plaintiff's tests; if the employer had timely disclosed the results of those tests to the employee, the employee's chronic lead toxicity would not have been nearly as severe. *Id.* at 446. In seeking to avoid the PWCA's immunity bar, the employee asserted that his employer's "fraudulent misrepresentation" had "caus[ed] the delay which aggravated a work-related injury." *Id.* at 447. Importantly, the employee was "not seeking compensation for the work-related injury itself," but only for the exacerbation of that injury. *Id.* "There is a difference," the Court explained, between "employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who *actively* mislead employees *already suffering* as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care." *Id.* at 448 (emphasis added). Only the latter, the Court held, would be excepted from the PWCA. *Id.*

Perhaps most importantly of all, Plaintiff concedes that all of this is so, agreeing that "[t]he *Martin* exception has been limited and applied narrowly, applying only when both prongs of the *Martin* exception exist." MTR at 22 (collecting cases); *accord Simmons v. Cmty. Educ. Ctrs., Inc.*, No. 15-929, 2015 WL 1788712, at *7 (E.D. Pa. Apr. 20, 2015) ("To meet the *Martin* exception, a plaintiff must show (1) fraudulent misrepresentation, which (2) leads to the aggravation of an employee's pre-existing condition." (internal quotation marks omitted)); *see also Kostryckyj v. Pentron Lab. Tech., LLC*, 52 A. 3d 333, 338 (Pa. Super. 2012) (*Martin*

exception requires "both fraud and delay leading to exacerbation of injury to remove claim from WCA").

To be sure, Plaintiff does make a long-shot plea for a freewheeling "profits-over-safety" exception to the PWCA, but he offers neither precedential support nor first-principles reasoning in support of that request—which, in any event, is flatly inconsistent with both the narrowness of *Martin* and the controlling case law confirming the narrowness of that scope. *See Winterberg*, 72 F. 3d at 323 ("If an allegation of 'flagrant misconduct' or 'bad faith' becomes the talisman by which a plaintiff gains access to a common law jury and escapes the exclusivity provisions of the Act, then Pennsylvania's workmen's compensation scheme runs the risk of dismantlement."); *Uon v. Tanabe International Co., Inc.*, No. 10-5185, 2010 WL 4946681, at *4 (E.D. Pa. Dec. 3, 2010) (holding that *Martin* requires more than that the allegedly fraudulent conduct that might be deemed flagrant; instead, the fraudulent misrepresentation must relate to, and result in the aggravation of, a pre-existing workplace injury).

### b.    Plaintiff failed to plead a case within the *Martin* exception.

Plaintiff here seeks to recover damages caused by a *new* (alleged) workplace injury—COVID-19—rather than damages stemming from the exacerbation of an *existing* workplace injury.  That distinction alone places this case outside the *Martin* exception.  Similarly, there is no contention that JBS Souderton, Inc. obtained any medical tests showing that Enock Benjamin had COVID-19 prior to his death.  There is no allegation that JBS Souderton, Inc. withheld the results of any medical tests on Enock Benjamin.  Plaintiff also does not allege any multi-year cover-up of Enock Benjamin's illness/injury as in *Martin*, and no resulting exacerbation of any pre-existing injury to Enock Benjamin caused by JBS Souderton, Inc. concealing or falsifying his non-existent medical test results.

Instead, Plaintiff alleges JBS Souderton, Inc. was *not* providing COVID-19 testing for all employees, nor for Enock Benjamin specifically.  Compl. ¶¶ 107-109.  Consequently, JBS Souderton, Inc. could not have hidden or withheld any testing information regarding Enock Benjamin or regarding any positive test showing he had COVID-19.  Like everyone else, JBS Souderton, Inc. had no information that Enock Benjamin had COVID-19 until after he died.

For all the many reasons noted above, Plaintiff fails to assert claims against JBS Souderton, Inc. that come within the *Martin* exception to the PWCA's exclusive remedy provision.[7]  Accordingly, Plaintiff's claims against JBS Souderton Inc. are barred as a matter of law, and JBS Souderton, Inc. was fraudulently joined in this lawsuit.  And because JBS Souderton, Inc. was fraudulently joined, its citizenship should be disregarded, diversity of citizenship exists, and Plaintiff's Motion to Remand should be denied.

**B.     Federal-Question Jurisdiction Exists Under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).**

Plaintiff's Motion to Remand does not engage with the federal-question analysis set forth in the Notice of Removal, which argued that jurisdiction exists here under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).  *Compare* NOR ¶¶ 63-75, ECF No. 1, *with* MTR at 25-28, ECF No. 17.  Under *Grable*, the party asserting federal jurisdiction must show that the plaintiff's complaint "[(1)] necessarily raise[s] a stated federal issue, [(2)] actually disputed and [(3)] substantial, which [(4)] a federal forum may entertain

---

[7] In addition, for the reasons explained in Defendants' motion to dismiss, Plaintiff fails to allege an actionable fraudulent or intentional misrepresentation.  And because Plaintiff has not alleged a viable claim for fraudulent or intentional misrepresentation, Plaintiff's case cannot fall within the *Martin* exception.  *Winterberg*, 72 F. 3d at 323 (*Martin* applies only where "the employer concealed, altered, or intentionally misrepresented information related to the work-related injury which resulted in aggravation of that injury").

without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314).

As the Notice of Removal explained, each of those requirements is met here.

*First*, Plaintiff's Complaint raises the issue of what obligation federal workplace-safety law imposes on a meat-processing plant to manage and mitigate the risk of intra-facility transmission of COVID-19. *See* NOR ¶¶ 63-69. As the Food Supply Chain Order confirms, there was—and remains—a two-prong federal interest at stake: continued operation of domestic meat-processing facilities and adherence to *federal* workplace-safety guidance. *See* 85 Fed. Reg. 26313.

*Second*, adjudicating Plaintiff's claims will require the Court to resolve the parties' dispute regarding *what* standard applied to JBS Souderton's conduct, including *which* provisions of *which* set of OSHA guidance should apply. *See Scott v. Lance Aviation, Inc.*, No. 8:09-CV-986, 2010 WL 11507789, at *3 (M.D. Fla. Mar. 10, 2010); *see also* NOR ¶¶ 71-72 (citing examples of conflicts between the Complaint and various federal pronouncements, which may pose inconsistent outcomes).

*Third*, the federal government has a "strong interest" in this issue and in "the development of a uniform body of [federal] law" surrounding it. *Gunn*, 569 U.S. at 260-61 (internal quotation marks omitted). The COVID-19 pandemic remains ongoing, and— regrettably—it is unlikely that this will be the last case that seeks to identify, construe, and apply a standard of conduct to the coronavirus-mitigation efforts of a U.S. meat-processing facility. Given the national interest in keeping such facilities both open and safe in accordance with the Food Supply Chain Order, it is imperative that a consistent, uniform body of law be developed to govern all such lawsuits as they arise. *See* 85 Fed. Reg. 26313; *Rural Cmty. Workers All. v.*

*Smithfield Foods*, No. 5:20-cv-06063, 2020 WL 2145350, at *8 (W.D. Mo. May 5, 2020) ("[U]nder these circumstances, where the guidelines are rapidly evolving, maintaining a uniform source for guidance and enforcement is crucial.").

*Fourth*, the exercise of federal jurisdiction in this case would not result in a proverbial "flood of cases" such that there would be a disruption to the traditional balance of federal and state judicial responsibilities. *See Grable*, 545 U.S. at 319. Indeed, as Plaintiff himself points out, this case "is unlike any other case, as this was not a hazard that was a normal and an everyday part of the Souderton workers' jobs—it was a global pandemic." MTR at 23. The unusual confluence of factual and legal circumstances at play here means there is no danger whatsoever of bringing every workplace-injury case (or, as Plaintiff hyperbolically suggests, every motor vehicle accident, *see* MTR at 26) within the ambit of Article III.

The Motion to Remand, however, does not meet this argument on its own terms; indeed, it does not so much as cite *Grable*, *Gunn*, or any other authority concerning the "removal to federal court of a state action with nondiverse parties raising a disputed issue of federal [law]." *Grable*, 545 U.S. at 310. Instead, Plaintiff appears to proceed on the premise that federal-question jurisdiction will not lie in any case unless (1) federal law supplies the cause of action being asserted; or (2) a federal statute completely preempts the asserted state-law claim, thereby "transform[ing], for jurisdictional purposes," the state-law claim into one that "arises under federal law." MTR at 26 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) and *Stellar v. Allied Signal, Inc.*, 98 F. Supp. 3d 790, 795 (E.D. Pa. 2015) for the foregoing propositions.

As *Grable* itself shows, Plaintiff is wrong. Nor, indeed, can *Grable* be dismissed as a mere derelict in the Supreme Court's federal-question jurisprudence. To the contrary, the

24

Supreme Court "ha[s] recognized *for [over] 100 years* that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312 (emphasis added) (citing *Hopkins v. Walker*, 244 U.S. 486, 490-91 (1917)).

Given the false premise on which Plaintiff rests his argument, it is no surprise that the arguments he bases on that premise are equally meritless. *First*, Plaintiff errs in suggesting Defendants' removal must fail because the Food Supply Chain Order does not "complete[ly] preempt[]" state tort law as it is applied to meat-processing plants. MTR at 26-27. Defendants have not argued—and do not here assert—complete-preemption removal. *See generally* NOR ¶¶ 63-75. Nor do they need to do so; satisfaction of the *Grable* factors alone provides an independently sufficient basis for federal-question jurisdiction.

*Second*, Plaintiff's heavy focus on the timing of the President's Food Supply Chain Order is misplaced. Plaintiff argues that the Food Supply Chain Order is relevant only if, and to the extent that, it shaped JBS Souderton's conduct in March 2020. *See* MTR at 28 ("[Defendants] also failed to explain how their conduct in March 2020 was guided by an Executive Order that wasn't made until the end of April 2020."); *id.* at 27 ("[T]here is no evidence presented whatsoever that the proclamation that was made on April 28, 2020 had anything to do with the actions taken by the JBS Defendants at the Souderton plant in March of 2020."); *id.* ("Authorizing the Secretary of Agriculture, to take necessary steps to insure that the country's meat supply is uninterrupted on April 28, 2020 has nothing to do with what occurred in the final weeks of March in Souderton, PA.").

This focus on whether and how the Food Supply Chain Order impacted Defendants' primary conduct reflects either Plaintiff's fundamental misunderstanding of the governing jurisdictional inquiry or an attempt to conflate the issues. Under *Grable*, the crucial question is

not whether federal law dictated the defendant's conduct or supplies the plaintiff's cause of action, but whether there is an important, disputed issue of federal law that justifies resort to a federal judicial forum. 545 U.S. at 314. Accordingly, the Food Supply Chain Order operates here not as the source of the federal guidance that JBS Souderton was following (or, in Plaintiff's view, disobeying) in March 2020; rather, it is compelling evidence of the importance of the federal interest in uniform national treatment of claims that seek to regulate—and potentially impose liability for—meat-processing facilities' decisions to remain open, close, reopen, or otherwise operate and provide an essential product to people during a pandemic.

*Third*, Plaintiff seeks to dismiss Defendants' invocation of various OSHA and CDC guidances on the theory that "[t]here is no common right of action created by OSHA or the CDC." MTR at 28. That is irrelevant. Again, Defendants *do not* seek to rest their assertion of federal-question jurisdiction on the existence of a federal cause of action; indeed, *Grable* jurisdiction expressly assumes the *absence* of such a cause of action. *See Grable*, 545 U.S. at 310 (recognizing that, when specified conditions are met, "removal to federal court *of a state action* with nondiverse parties raising a disputed issue of federal [law]" is proper) (emphasis added).[8] It is Plaintiff's explicit reliance on federal guidances, and his impermissible mixing and matching of them to create a new standard of care not supported by any of the guidances, that invokes an actual, stated federal interest that is substantial and disputed by the parties.

*           *           *

---

[8] Although Plaintiff asserts that he seeks to use the CDC and OSHA guidances as mere "evidence as to the standard of care" against which Defendants' conduct is to be judged (MTR at 28), that representation is not strictly accurate. Instead, as the Notice of Removal points out, Plaintiff's Complaint seeks to hold Defendants liable under a standard of care that impermissibly mixes and matches from guidances issued at different points in time (including after Mr. Benjamin's death). *See* NOR ¶ 72, ECF No. 1.

The short of the matter is this:  Under controlling Supreme Court precedent, "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.  This is just such a case, and Plaintiff's Motion to Remand should be denied because the Court has federal-question jurisdiction.

## IV.    CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court deny Plaintiff's Motion to Remand.

Dated: July 13, 2020                                      Respectfully submitted,


                                                        */s/ Molly E. Flynn*
                                                        Molly E. Flynn (Pa. ID No. 205593)
                                                        Mark D. Taticchi (Pa. ID No. 323436)
                                                        Rebecca L. Trela (Pa. ID No. 313555)
                                                        FAEGRE DRINKER BIDDLE & REATH LLP
                                                        One Logan Square, Suite 2000
                                                        Philadelphia, PA  19103-6996
                                                        Telephone:    (215) 988-2700
                                                        Facsimile:    (215) 988-2757

                                                        *Attorneys for Defendants JBS USA Food Co.,*
                                                        *JBS USA Holdings, Inc., JBS Souderton, Inc.,*
                                                        *and Pilgrim's Pride Corp.*

<u>**CERTIFICATE OF SERVICE**</u>

I, Molly E. Flynn, hereby certify that on July 13, 2020, I electronically filed the foregoing

Opposition to Plaintiff's Motion to Remand of Defendants JBS USA Food Company, JBS USA

Holdings, Inc., JBS Souderton, Inc., and Pilgrim's Pride Corporation with the Clerk of the Court

using the CM/ECF system, which will send notification of such filing to counsel or parties of

record electronically by CM/ECF.

*/s/ Molly E. Flynn*
Molly E. Flynn

*Attorney for Defendants JBS USA Food Co.,*
*JBS USA Holdings, Inc., JBS Souderton, Inc.,*
*and Pilgrim's Pride Corp.*
