IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERDINAND BENJAMIN, | : | CIVIL ACTION |
| Individually and as the Personal Representative | : | |
| of the Estate of Enock Benjamin | : | |
| | : | |
| v. | : | |
| | : | |
| JBS S.A., ET AL. | : | NO. 20-2594 |

**MEMORANDUM**

**Padova, J.**                                          **January 29, 2021**

This is a negligence and intentional tort action arising out of the death of Plaintiff Ferdinand

Benjamin's father, Enock Benjamin, who contracted COVID-19 and subsequently died of

respiratory failure after reporting to his job at a meat-processing plant during the pandemic.

Plaintiff filed suit in the Court of Common Pleas of Philadelphia County against JBS S.A., JBS

USA Food Company, JBS USA Holdings, Inc., JBS Souderton, Inc., and Pilgrim's Pride

Corporation (collectively, the "Defendants"), various corporations allegedly affiliated with the

meat-processing plant.  The Complaint asserts state tort law claims only.  Moreover, Enock and

one defendant, JBS Souderton, Inc. ("Souderton"), are both Pennsylvania citizens.[1]  Defendants

nevertheless removed the case to this Court, asserting that we have federal question jurisdiction

pursuant to Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S.

308 (2005), and diversity jurisdiction because Souderton was fraudulently joined.  Presently before

---

[1] All other Defendants are diverse.  JBS S.A. is a corporation in Brazil with a principal place of business in Sao Paulo.  (Compl. ¶ 114.)  JBS USA Food Company and Pilgrim's Pride Corporation are incorporated in Delaware, (Id. ¶¶ 118, 130), and have principal places of business in Colorado.  (Defs.' Notice of Removal ("NOR") ¶¶ 29, 32.)  Although the parties dispute whether JBS USA Holdings, Inc. is still in existence, Defendants admit that when it was in existence, JBS USA Holdings, Inc. was also a Delaware corporation with its principal place of business in Colorado.  (Id. ¶ 30.)

the Court is Plaintiff's Motion to Remand.  We held argument on Plaintiff's Motion on January 19, 2021.  At the conclusion of the argument, we orally granted the Motion to Remand with this opinion to follow.  (See N.T. 1/19/21, at 37-40.)

## I.   BACKGROUND

Defendants are "the world's largest meat processor."  (Compl. ¶ 41.)  Plaintiff's father, Enock Benjamin, was a citizen of Pennsylvania who worked at a JBS meat-processing plant in Souderton, Pennsylvania for over ten years until his death on April 3, 2020.  (See id. ¶¶ 2, 47.)  At the Souderton plant, workers were required to stand only a few feet apart and had to be within inches of each other to communicate because the machines were so loud.  (Id. ¶ 53.)  In March of 2020, Defendants knew that workers at the Souderton plant had contracted COVID-19.  (Id. ¶¶ 159.)  However, they led workers to believe that workers who were out sick had the flu instead of COVID-19.  (Id. ¶¶ 61, 161-62.)  They also ignored safety regulations and continued to make employees work in cramped conditions.  (Id. ¶¶ 59-60, 159-62.)

Indeed, up until March 27, 2020, Souderton plant workers were not required to wear masks or any protective gear, despite CDC and OSHA guidance to the contrary.  (Id. ¶ 89.)  On March 27, 2020, Defendants closed the Souderton plant for sanitation after a number of workers had fallen ill.  (Id. ¶ 68.)  That same day, Enock left work after experiencing "cough-like symptoms."  (Id. ¶ 93.)  The Souderton plant reduced production on March 30, 2020 "after several senior members displayed flu-like symptoms."  (Id. ¶ 70.)  By April 2, 2020, nineteen employees were confirmed to have tested positive.  (Id. ¶ 76.)  Enock passed away from respiratory failure related to COVID-19 on April 3, 2020.  (Id. ¶¶ 95-97.)

Following Enock's death, Plaintiff commenced this civil action in the Philadelphia Court of Common Pleas on Enock's behalf.  Plaintiff asserts five common law claims against all

Defendants: (1) negligence, (2) fraudulent misrepresentation, (3) intentional misrepresentation, (4) wrongful death, and (5) survival.  After Defendants removed the action to this Court, asserting federal question and diversity jurisdiction, Plaintiff filed the instant Motion to Remand.

## II.    LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States . . . ."  28 U.S.C. § 1441(a).  The district court has original jurisdiction over cases involving a federal question or diverse parties.  28 U.S.C. §§ 1331, 1332.  We have federal question jurisdiction where the claims arise under the Constitution, laws, or treaties of the United States.  Id. § 1331.  Pursuant to § 1332, district courts have diversity jurisdiction over civil actions where "the matter in controversy exceeds the sum or value of $75,000 and is between 'citizens of different states.'"  McCann v. Newman Irrevocable Tr., 458 F.3d 281, 286 (3d Cir. 2006) (quoting 28 U.S.C. § 1332(a)(1)).

If the district court determines that it lacks subject matter jurisdiction over a removed action, remand is mandatory.  28 U.S.C. § 1447(c).  Importantly, the defendant bears the burden of establishing removal jurisdiction.  Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990); see also Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (stating that the removing party "bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court") (citations omitted).  To determine whether the defendant has met its burden of establishing removal jurisdiction, a district court may consider "reliable evidence that the defendant may proffer to support the removal."  In re Briscoe, 448 F.3d 201, 219-20 (3d Cir. 2006).  However, "the removal statute is 'to be strictly construed against removal and all doubts

should be resolved in favor of remand.'" Sdregas v. Home Depot, Inc., Civ. A. No. 01-5851, 2002 WL 32349815, at *2 (E.D. Pa. Apr. 5, 2002) (quoting Boyer, 913 F.2d at 111).

## III.   DISCUSSION

### A.   Federal Question

Plaintiff argues that Defendants improperly removed this case based on federal question jurisdiction because the Complaint asserts only state tort claims.  Defendants nevertheless maintain that federal question jurisdiction exists pursuant to Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005).  Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Federal question jurisdiction pursuant to § 1331 is typically invoked in cases in which the plaintiff "plead[s] a cause of action created by federal law."  Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 162-63 (3d Cir. 2014) (citing Grable, 545 U.S. at 312) (additional citations omitted).  "However, [state law] causes of action . . . may nonetheless 'arise under' federal law for purposes of [federal question jurisdiction] if the four-pronged Grable test is met."  Id. at 163.

The Grable test provides that a court will have federal question jurisdiction over a state law claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Id. (quoting Gunn v. Minton, 568 U.S. 251, 258 (2013)).  Notably, "[o]nly a 'slim category' of cases satisfy the Grable test."  Id. (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006)).  The party asserting federal jurisdiction bears the burden of proving all four factors.  See McLaughlin v. Bayer Essure, Inc., Civ. A. No. 14-7315, 2018 WL 3535142, at *3 (E.D. Pa. July 23, 2018) (citing Boyer, 913 F.2d at 111).  Defendants maintain that

we have federal question jurisdiction pursuant to <u>Grable</u> because the Complaint contains references to OSHA and CDC guidance and an Executive Order, issued weeks after Enock's death, recognized the importance of the continued operations of meat processors during the COVID-19 pandemic.

### 1. Necessarily Raised

Defendants argue that this case necessarily raises a federal issue because the Complaint alleges that Defendants failed to comply with OSHA and CDC guidance.  To illustrate, the Complaint alleges: "Despite [OSHA] guidance, [] Defendants did not obtain masks or other PPE for their workers until April 2, 2020," (<u>Id.</u> ¶ 26), and that Defendants were negligent in "[i]gnoring federal guidance from the CDC and OSHA by not mandating the use of masks and PPE at the JBS Souderton Plant[.]"  (<u>Id.</u> ¶ 154(h).)  Similarly, the Complaint alleges that Defendants failed to "mandate[e] and/or enforc[e] social distancing guidelines at the JBS Souderton Plant[,]" "[i]gnored federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill report their symptoms to their superiors[,]" and "[i]gnor[ed] federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill stay home from work and self-quarantine[.]" (<u>Id.</u> ¶ 154(i)-(k).)

"Not every case that implicates federal laws, statutes, or policies qualifies as a 'federal case' . . . ." <u>McGuire v. Palmerton Hosp.</u>, Civ. A. No. 12-1718, 2012 WL 2362488, at *3 (E.D. Pa. June 20, 2012) (citing <u>Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.</u>, Civ. A. No. 08-663, 2008 WL 2682685, at *5 (W.D. Pa. June 30, 2008)) (additional citations omitted).  A federal issue is necessarily raised when "an element of the state law claim requires construction of federal law." <u>MHA LLC v. HealthFirst, Inc.</u>, 629 F. App'x 409, 412-13 (3d Cir. 2015).  In contrast, "[m]ere reference to federal statutes and regulations is insufficient to support federal question jurisdiction." <u>McGuire</u>, 2012 WL 2362488, at *3 (citing <u>Kalick v. Nw. Airlines Corp.</u>, 372 F.

App'x 317, 320 (3d Cir. 2010)).  Accordingly, case law in this district establishes that a complaint that asserts a state law claim based on the alleged violation of federal regulations is insufficient to necessarily raise a federal issue.  See id. at *4. ("Though her Complaint references alleged violations of [OSHA], these references are merely examples of Defendants' conduct and do not create claims that arise under federal law"); see also Yellen, 832 F. Supp. 2d at 496, 500 (finding that none of the Grable factors were met even though plaintiff's state law claims "allege[d] violations of the Federal Aviation Regulations").

Defendants acknowledge this case law and concede that there is a lack of legal support for their argument that a federal issue is necessarily raised, but nevertheless maintain that the COVID-19 pandemic makes this a "novel case."  (N.T. 1/19/21, at 8.)  Although we recognize the unprecedented difficulties the pandemic has caused, we see no reason to diverge from analogous, well-reasoned holdings in our district, particularly where, as here, the Complaint is rooted in tort law and refers only to OSHA and CDC *guidance*.  Therefore, we conclude that the fact that the Complaint references OSHA and CDC guidelines is insufficient to "necessarily raise" a federal issue as required under the first prong of Grable.  See McGuire, 2012 WL 2362488, at *3.  Because Defendants have failed to satisfy Grable's first factor, they are unable to meet their heavy burden of proving federal question jurisdiction.  See Boyer, 913 F.2d at 111.  Despite this conclusion, we acknowledge the unusual circumstances that the COVID-19 pandemic presents; therefore, we also address the remaining Grable factors and explain that they are unsatisfied as well.

### 2. *Actually Disputed*

Defendants maintain that this case presents a federal issue that is "actually disputed" because the parties disagree as to which OSHA and CDC guidelines applied to Defendants' conduct and what the guidelines required at the time Enock contracted COVID-19; for example, whether wearing masks was recommended at that time.  (See N.T. 1/19/21, at 13.)  However,

Defendants do not elaborate on any specific language that is in dispute.  See MHA LLC, 629 F. App'x at 414 (finding that there was no "actually disputed issue" where "[t]he parties [did] not identif[y] a dispute over the meaning of particular statutory text; rather, [they] generally aver[ed] that the parties disagree over the application of the [statute] to their situation.")  They certainly have not presented us "with a discrete federal issue that is 'dispositive of the case and would be controlling in numerous other cases.'"  Id. (citing Empire Healthchoice, 547 U.S. at 700 (other citations omitted).

Instead, in vague terms, Defendants argue that "Plaintiff's claims include allegations that contradict federal policy or regulations" and, therefore, "necessarily raise a disputed federal issue." (NOR ¶ 70.)  Moreover, as we noted above, no statutory or regulatory language is at issue in this case; the Complaint cites only OSHA and CDC guidelines.  Therefore, Defendants have not met their burden of showing that any federal issue is actually disputed.  See MHA LLC, 620 F. App'x at 414.

### 3. *Substantial*

Defendants assert that this case presents a "substantial" federal issue because the federal government has an interest in creating a uniform standard of conduct for the meat processing industry during the COVID-19 pandemic.  In support, Defendants cite an Executive Order issued on April 28, 2020 ("Food Supply Chain Order"), which noted the importance of the continued operations of meat processors during the COVID-19 pandemic "to ensure a [] supply of protein for Americans" and also enabled the Secretary of Agriculture to "take all appropriate action . . . to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA."  Exec. Order No. 13917, 85 Fed. Reg 26313 (Apr. 28, 2020).  According to Defendants, the Food Supply Chain Order confirms a substantial

federal interest in keeping meat-processing facilities open and, thus, it confirms that a substantial federal issue exists in this case.

To qualify for a federal forum under <u>Grable</u>, a suit generally "call[s] into question the validity of a federal statute or the conduct of a federal actor." <u>MHA LLC</u>, 629 F. App'x at 414 (citation omitted). Indeed, "[t]he prototypical case of <u>Grable</u> jurisdiction is one in which the federal government itself seeks access to a federal forum, an action of the federal government must be adjudicated, or where the validity of a federal statute is in question." <u>Id.</u> at 413 n.6 (citing <u>Gunn</u>, 568 U.S. at 260 and <u>Grable</u>, 545 U.S. at 213). On the other hand, if the issue is significant only to the parties, rather than "the federal system," it is not a substantial federal issue. <u>See id.</u> at 413 (quoting <u>Gunn</u>, 568 U.S. at 258-59). Cases that depend "'nearly [on a] pure issue of law' that would govern numerous other cases" are different from "fact-bound and situation-specific" cases. <u>Id.</u> (quoting <u>Empire Healthchoice</u>, 547 U.S. at 700-01).

In the instant matter, the federal government is not a party, the federal government is not "seeking access to a federal forum, no action of the federal government is being adjudicated, and there is no question about the validity of a federal statute." <u>Bayer Essure, Inc.</u>, Civ. A. No. 14-7315, 2018 WL 3535142, at *4 (citing <u>MHA LLC</u>, 629 F. App'x at 413 n.6). Therefore, the instant matter is clearly not a "prototypical case of <u>Grable</u> jurisdiction." <u>See MHA LLC</u>, 629 F. App'x at 413 n.6 (citations omitted). Additionally, because resolution of this matter requires a fact-specific assessment of Defendants' conduct, whether Defendants knew of COVID-19 infections at the Souderton plant, the severity of the infection rate, and other inquires relating to how these particular Defendants responded to the pandemic at their specific plant in Souderton, this case is unquestionably "fact-bound and situation-specific" and does not present a "pure issue of law." <u>Empire Healthchoice</u>, 547 U.S. at 700-01.

Moreover, we note that it is unclear how the Food Supply Chain Order, issued weeks after Enock's death, is at all relevant to the instant matter. At oral argument, Defendants agreed that they would object to Plaintiff's use of guidelines that were not in effect at the time of the injury. (N.T. 1/19/21, at 20.) Similarly, Plaintiff stated that he had no intentions of using the Food Supply Chain Order during this litigation because "[i]t didn't exist" prior to Enock's death. (See N.T. 1/19/21, at 16-17.) We therefore conclude that the mere existence of the Food Supply Chain Order does not convert Plaintiff's state law tort claims against his employer and its affiliates into a "substantial" federal issue. Defendants have thus failed to meet their burden of establishing the third Grable factor.

### 4. Federal-State Balance

Finally, to establish federal jurisdiction under Grable, Defendants are required to show that Plaintiff's state law claims are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 163 (3d Cir. 2014) (quoting Gunn, 568 U.S. at 258). Defendants argue that finding federal question jurisdiction here will not disrupt the federal-state balance because our decision would be limited to meat and poultry practices during the COVID-19 pandemic.

However, the Complaint asserts "run-of-the mill state tort" claims, which are well within the purview of the state court. Yellen, 832 F. Supp. 2d at 499 (citing Grable, 545 U.S. at 310). This case therefore "fits comfortably within the state courts' realm of expertise," and we conclude that finding otherwise would risk disrupting the balance between federal and state courts. See id. (citing Grable, 545 U.S. at 310). As we face another year amid the pandemic, we will not risk potentially eviscerating the federal-state balance by asserting federal question jurisdiction over tort claims that arise in the workplace simply because they may involve an employer's response to COVID-19. Accordingly, we instead find that it is inappropriate to address Plaintiff's tort claims

in this federal forum.  <u>See</u> <u>id.</u> at 499.  For the above reasons, Defendants have failed to meet their burden of establishing any of the four <u>Grable</u> factors and, therefore, we reject their assertion that we have federal question jurisdiction over this matter

**B.      Fraudulent Joinder**

Plaintiff argues in his Motion to Remand that Defendants improperly removed this case based on diversity jurisdiction because both Plaintiff and Souderton are Pennsylvania citizens and, contrary to Defendants' assertion, Souderton was not fraudulently joined.  "In a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction."  <u>Briscoe</u>, 448 F.3d at 216.  However, "the removing party carries a heavy burden of persuasion" in establishing fraudulent joinder.  <u>Batoff v. State Farm Ins. Co.</u>, 977 F.2d 848, 851 (3d Cir. 1992) (quotation and citation omitted).  "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant[s] or seek a joint judgment."  <u>Id.</u> (quotation omitted).

"In evaluating the alleged fraud, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed" and "must assume as true all factual allegations of the complaint."  <u>Id.</u> at 851-52 (quotation omitted).  The court must also "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff."  <u>Id.</u> at 852 (quotation omitted).  We will not find a defendant's joinder to be fraudulent "[s]imply because we come to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action."  <u>Lyall v. Airtran Airlines, Inc.</u>, 109 F. Supp. 2d 365, 367-68 (E.D. Pa. 2000) (citation omitted).  Rather, we will only find fraudulent joinder where the

plaintiff's claims are "'wholly insubstantial and frivolous.'"  <u>Batoff</u>, 977 F.2d at 852 (quoting

<u>Lunderstadt v. Colafella</u>, 885 F.2d 66, 70 (3d Cir. 1989)).  "In other words, a finding of fraudulent

joinder is usually reserved for situations where recovery from the nondiverse defendant is a clear

legal impossibility."  <u>West v. Marriott Hotel Servs., Inc.</u>, Civ. A. No. 10-4130, 2010 WL 4343540,

*3 (E.D. Pa. Nov. 2, 2010).  "Fraudulent joinder should not be found simply because plaintiff has

a weak case against a non-diverse defendant."  <u>Id.</u> (citing <u>Boyer</u>, 913 F.2d at 111).  "[I]f there is

even a possibility that a state court would find that the complaint states a cause of action against

[a] resident defendant[], the federal court must find that joinder was proper . . . ."  <u>Briscoe</u>, 448

F.3d at 217 (quoting <u>Batoff</u>, 977 F.2d at 851).

If we determine that a defendant's joinder was fraudulent, we can "disregard, for

jurisdictional purposes, the citizenship of [the] nondiverse defendant[], assume jurisdiction over

[the] case, dismiss the nondiverse defendant[], and thereby retain jurisdiction."  <u>Id.</u> at 216 (quoting

<u>Mayes v. Rapoport</u>, 198 F.3d 457, 461 (4th Cir. 1999)).  On the other hand, if we determine that

we do not have subject matter jurisdiction over the action because joinder of the non-diverse

defendant was not fraudulent, we must remand the case to state court.  <u>Id.</u> (citing 28 U.S.C. §

1447(c)).

Defendants argue that Plaintiff has no basis in fact or colorable ground to support his claim

against Souderton because the Pennsylvania Workers' Compensation Act ("PWCA") bars any

claims against Souderton.  Section 481(a) of the PWCA states that, "[t]he liability of an employer

under this act shall be exclusive and in place of any and all other liability to such employees, his

legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled

to damage in any action at law or otherwise on account of injury or death . . . or occupational

disease."  77 Pa. Stat. Ann. § 481(a).  Defendants contend that Souderton was Enock's employer,

and therefore, the PWCA bars Plaintiff's claims against it.  Plaintiff counters that there is a factual dispute as to whether Souderton was Enock's employer and that, even if Souderton was Enock's employer, the PWCA does not bar his claims.

### 1.   Identity of Employer

In support of their assertion that Souderton employed Enock, Defendants provide several documents, including Enock's paystub, his W-2 form, his residency certification form, and the collective bargaining agreement between Souderton and its union, all of which identify Souderton as Enock's employer.  (Defs.' Mem. in Opp. to Pl.'s Mot. to Remand (Docket No. 21), Exs. A-D.)  Defendants also include several declarations which similarly state that Enock was an employee of Souderton.  (Id., Exs. H, I, J.)

Plaintiff maintains, however, that JBS USA Holdings, Inc. may have employed Enock. Plaintiff relies on a Notice dated June 15, 2020 from the Pennsylvania Department of Labor denying Enock's claim for Workers' Compensation Benefits, which named JBS USA Holdings, Inc. as Enock's employer. (Pl.'s Mem. In Supp. of Mot. to Remand (Docket No. 17) Ex. A.)  This Notice was sent to Plaintiff by Sedgwick Claims Management Services, Inc., which states in the letter enclosing the Notice that it "manages claims for American Zurich Insurance Company on behalf of JBS Holdings." (Id., Ex. A, at 2 of 91.)  Plaintiff also attaches documents sent to other Souderton-plant workers by the Pennsylvania Department of Labor and Industry dated April 23, 2019, November 15, 2019, and April 16, 2020, which similarly list JBS USA Holdings, Inc. as their employer. (Id., Exs. B, C, D.)

At oral argument, Plaintiff also pointed out that although Enock's W-2 form named Souderton as the employer, the W-2 form contained an address in Greeley, Colorado—where JBS USA Holdings, Inc. was located. (N.T. 1/19/21, at 33.)  Additionally, Plaintiff argued that the

employer identification number on the workers' compensation denial letters is the number for JBS USA Holdings, Inc.  (Id.)

In response to the assertion that JBS Holdings, Inc. was Enock's employer, Defendants rely on another declaration to argue that JBS USA Holdings, Inc. ceased to exist in 2015 and, therefore, cannot be Enock's employer.  (See Motion to Dismiss (Docket No. 15), Ex A. ¶ 6.) They further maintain that the letter Enock received from the Department of Labor listing JBS USA Holding, Inc. as his employer was the result of a mistake at the bureau of Workers' Compensation and it was corrected as soon as Defendants learned of it.  They refer us to a follow-up letter sent to Enock by the Department of Labor in July 2020 advising that the employer had been changed from JBS USA Holdings, Inc. to Souderton.  (Defs.' Mem. in Opp. to Pl.'s Mot. to Remand (Docket No. 21) Ex. E.)

As noted above, in evaluating a claim of fraudulent joinder, we are to "focus on the plaintiff's complaint at the time the petition for removal was filed" and "must assume as true all factual allegations of the complaint."  Batoff, 977 F.2d at 851-52 (quotation omitted).  Defendants nevertheless ask us to look beyond the facts alleged in the Complaint and consider documents and declarations that they have provided.  Defendants rely on In re Briscoe, 448 F.3d 201 (3d Cir. 2006), in which the Third Circuit stated that a district court addressing an assertion of fraudulent joinder may consider (1) evidence established from prior proceedings and (2) facts subject to judicial notice, noting that the court did "not risk crossing the line between a proper threshold jurisdictional inquiry and an improper decision on the merits" by considering this evidence.  Id. at 219-21.  In limited circumstances, we may also consider affidavits that present undisputed facts. See Yellen, 832 F. Supp. 2d at 504 (citing Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d 879, 881-82 (10th Cir. 1967)) (emphasis added).

Here, Defendants' fraudulent joinder argument rests on documents outside of the Complaint and depends upon our consideration of those documents. We seriously question whether we can consider those documents as they do not fall under the types of permissible evidence discussed in Briscoe and Plaintiff disputes that Souderton was Enock's employer. See 448 F.3d at 219-21; Yellen, 832 F. Supp. 2d at 504. But see Bernsten v. Balli Steel, PLC, Civ. A. No. 08-62, 2008 WL 862470, at *5-6 (E.D. Pa. Mar. 31, 2008) (considering emails, inter alia, in determining fraudulent joinder). However, even assuming consideration of outside documents is permissible, the documents that have been presented do not clearly establish that Souderton was Enock's employer. Nor do the documents allow us to conclusively determine that Plaintiff "created" JBS USA Holdings, Inc. for the purposes of defeating diversity jurisdiction. Cf. id. at *1, 6 (finding that "the conclusion [was] virtually inescapable" that the plaintiff unilaterally created a fictious entity solely for litigation purposes).

As a result, we are unable to determine "with complete certainty"—or rather, with any certainty—which Defendant employed Enock. Moreover, because Defendants' argument that Souderton was fraudulently joined (and that we therefore have diversity jurisdiction) is dependent upon the factual premise that Souderton was Enock's employer, we necessarily conclude that Defendants have failed to establish that Souderton was fraudulently joined as a Defendant in this case. For that reason alone, we conclude that Defendants have failed to meet their burden of establishing removal jurisdiction based on diversity.

### 2. The PWCA's Exclusivity Provision

Defendants' argument that Souderton was fraudulently joined is also dependent on a second proposition—that any claim against Enock's employer would be barred by the PWCA's exclusivity provision. That provision, as noted above, provides that an employer's liability under

the statute is "exclusive and in place of any and all other liability to [its] employees . . . in any action at law or otherwise on account of injury or death."  77 Pa. Stat. Ann. § 481(a).  Plaintiff argues, however, that his claims fall within an exception to that provision that is set forth in Martin v. Lancaster Battery Co., 606 A.2d 444 (Pa. 1992).

In Martin, the plaintiff sued his employer after the employer intentionally withheld and altered the plaintiff's blood test results, which were positive for lead exposure.  Id. at 446.  The Pennsylvania Supreme Court held that the plaintiff's fraudulent misrepresentation claims were not barred by the PWCA, noting "[t]here is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who *actively* mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care."  Id. at 447-48 (emphasis in original).  Moreover, when "[t]he aggravation of the injury arises from and is related to the fraudulent misrepresentation of the employer. . . the [plaintiffs] are not limited to their remedies under the [PWCA] and are not precluded from bringing a common law action against [their employer]."  Id. at 448 (citation omitted).

Similar to the plaintiff in Martin, Plaintiff asserts claims of fraudulent and intentional misrepresentation.  The Complaint alleges that Enock left the Souderton plant on March 27, 2020 "after experiencing cough-like symptoms" and subsequently died of respiratory failure caused by COVID-19 on April 3, 2020.  (Compl. ¶¶ 2, 92-93, 97).  The Complaint further alleges that by early March—weeks before Enock's death—"the virus was firmly established in the Souderton plant."  (Id. at ¶ 57.)  Despite OSHA guidance issued on March 9, 2020 that instructed employers to send sick workers home, Defendants allegedly disregarded the safety of their employees and

required them work in cramped conditions without masks.  (Id. ¶¶ 58-59, 89-90.)  Plaintiff avers

that Defendants failed to change their policies even after learning someone at the facility had tested

positive and led employees to believe that those who were out sick had the flu rather than COVID-

19.  (Id. ¶¶ 61-62.)  After the first worker tested positive, Defendants allegedly kept the facility

open and only employees who had been in direct contact with the person for "extended periods of

time" were allowed to take time off work.  (Id. ¶¶ 65, 66.)  The Complaint alleges that Defendants

had a "work while sick policy."  (Id. ¶ 79.)

          According to the Complaint, Defendants "intentionally ignor[ed] the fact that workers at

the Souderton Plant were infected with and/or were displaying symptoms consistent with COVID-

19."  (Id. ¶ 154(c).)  Defendants "misrepresented to workers that there was no risk of infection

and/or that the workers were unlikely to become infected and/or deliberately withheld their

knowledge of workers at The Plant becoming infected with COVID-19."  (Id. ¶ 162.)  "Defendants

fraudulently misrepresented the risk of infection to other workers at The Plant to induce those

workers to continue their employment at The Plant."  (Id. ¶ 163.)  "Defendants intentionally

misrepresented and deceived workers into believing that the JBS Souderton Plant was safe to

ensure that workers continued to show up each day for their shifts and to ensure that the []

Defendants continued to profit."  (Id. ¶ 179.)

          Defendants argue that Plaintiff's claims do not fall within the Martin exception because

Martin applies only when an employer's actions aggravated an employee's pre-existing injury

through fraudulent misrepresentation of facts pertaining to that injury.  See Winterberg v.

Transportation Insurance Co., 72 F.3d 318, 323 (3d Cir. 1995); see also Uon v. Tanabe Int'l Co.,

Civ. A. No. 10-5185, 2010 WL 4946681, at *4 (E.D. Pa. Dec. 3, 2010) ("[T]o fit within

the Martin exception, the employee must show that his employer aggravated an existing injury

through fraudulent misrepresentation or concealment of facts pertaining to that injury." (citations omitted)).  Defendants contend that, unlike the plaintiff in <u>Martin</u>, Plaintiff suffered from a new workplace injury—COVID-19.  Yet, at oral argument, Plaintiff pointed out that Enock was overweight and "may have been suffering from diabetes," which could constitute preexisting injuries that were aggravated by Defendants' alleged concealment of positive COVID-19 cases in the plant.  (N.T. 1/19/21 at 35.)

As stated above, in evaluating a claim of fraudulent joinder, we must "focus on the plaintiff's complaint at the time the petition for removal was filed" and "assume as true all factual allegations of the complaint."  <u>Batoff</u>, 977 F.2d at 851-52 (quotation omitted).  Here, Plaintiff's Complaint alleges, inter alia, that Defendants "intentionally ignor[ed] the fact that workers at the Souderton Plant were infected with and/or were displaying symptoms consistent with COVID-19," (<u>Id.</u> ¶ 154),  and "misrepresented to workers that there was no risk of infection and/or that workers were unlikely to become infected and/or deliberately withheld their knowledge of workers at The Plant becoming infected with COVID-19."  (<u>Id.</u> ¶ 162.)  Therefore, viewing the allegations in Plaintiff's Complaint as true, Plaintiff's argument that his claims fall within the <u>Martin</u> exception is far from "wholly insubstantial and frivolous."  <u>See</u> <u>Batoff</u>, 977 F.2d at 852 (quoting <u>Lunderstadt v. Colafella</u>, 885 F.2d 66, 70 (3d Cir.1989)).  We certainly cannot say that recovery would be "a clear legal impossibility."  <u>See</u> <u>West</u>, 2010 WL 4343540, at *3.

Admittedly, our "inquiry into Pennsylvania law" regarding the applicability of the <u>Martin</u> exception "has not been penetrating;" however, "it should not be," because "[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  <u>Batoff</u>, 977 F.2d at 853.  If there is "even a possibility that a state court would find that the complaint states a cause of action against

[a] resident defendant[], [we] must find that joinder was proper." <u>Briscoe</u>, 448 F.3d at 217 (quotation omitted). We therefore reject Defendants' contention that Plaintiff's claims could not possibly fall under the <u>Martin</u> exception to PWCA exclusivity and, for that additional reason, we conclude that Defendants have failed to establish that Souderton was fraudulently joined as a Defendant in this action, such that we would have diversity jurisdiction over the action.

## IV.    CONCLUSION

For the reasons stated above, we conclude that Defendants have failed to meet their heavy burden of establishing removal jurisdiction based on federal question or diversity and, accordingly, we find that remand of this case is appropriate. We therefore grant Plaintiff's Motion to Remand and remand the case to the Philadelphia Court of Common Pleas.   An appropriate order follows.


BY THE COURT:

/s/ John R. Padova
John R. Padova, J.

18